IN RE ESTATE OF ALONZO L. CLARKE.
HELEN CLARKE, CLAIMANT, APPELLANT, v. MARGARET DALE CLARKE ET AL., APPELLEES.

FILED DECEMBER 8, 1933. No. 28625.

*C. J. Baird* and *Barton H. Kuhns,* for appellant.

*Carlos W. Goltz, Alfred Pizey, Ivan E. Maginn, Stiner & Boslaugh, Edmund Nuss* and *Brogan, Ellick & Van Dusen, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and BEGLEY and HORTH, District Judges.

ROSE, J.

This is a proceeding in equity instituted by Arthur H. Jones and Archie D. Marvel, trustees duly appointed to

execute trusts created by the will of Alonzo L. Clarke, deceased. They pray for the interpretation of two paragraphs of his will and for a judicial order directing distribution of portions of testator's residuary trust estate. The bequests submitted for interpretation read in part as follows:

"22. I give and bequeath to my executors and their successors in trust fifty (50) shares of the capital stock of the First National Bank of Holdrege, Nebraska, and fifty (50) shares of the preferred stock of the Beatrice Creamery Company, in trust, to collect and receive the dividends and income therefrom, and to pay the dividends and income therefrom annually, or at the time they shall be declared or received, to my son, William H. Clarke, during his natural life, and at the time of the death of said William H. Clarke, I give and bequeath said fifty (50) shares of the capital stock of the First National Bank of Holdrege, Nebraska, and said fifty (50) shares of the preferred stock of the Beatrice Creamery Company, and the accrued accumulations therefrom, to the heirs at law of said William H. Clarke, deceased, and direct my said executors or their successors in trust to convey, transfer, deliver and pay the same at said time to his heirs at law, absolutely."

"27. I give, devise and bequeath to my executors and their successors in trust all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, in trust, to divide the same into eight (8) equal parts, and for this purpose and to accomplish this end my executors named herein may sell and convey and are hereby empowered and authorized to sell and convey any part or all of the residue of my estate, if it can be done without material loss and injury thereto, and to hold and invest one-eighth (1/8) thereof, to collect and receive the interest, income and accumulation therefrom, and to annually pay the interest, income and accumulation there-

from to William H. Clarke, my son, of Manilla, P. I., during the term and period of his natural life, and at the time of the death of said William H. Clarke, I give, devise and bequeath said one-eighth (1/8) of the said residue of my estate, and the accrued accumulations therefrom, to the heirs at law of said William H. Clarke, deceased, and direct my said executors or their successors in trust to pay, transfer, convey and deliver the same to his heirs at law, absolutely."

Under further provisions of paragraph 27, the income from one-eighth of this residuary trust estate was willed to Gertrude Touzlin Clarke and the residue thereof at her death to the issue of her body by William H. Clarke; the income from one-eighth to Frank N. Clarke and the residue thereof at his death to his heirs at law; the income from one-eighth to Carrie Detweiler Clarke and the residue thereof to the issue of her body by Frank N. Clarke; one-eighth of the residuary trust estate to James N. Clarke, brother of testator; one-eighth thereof to Hattie D. Clarke, sister-in-law of testator; two-eighths thereof to Lida Clarke Seaton, daughter of testator.

The question in controversy is the meaning of the term "heirs at law" as used by the testator in the bequests quoted. To facilitate the interpretation another paragraph of the will is also reproduced:

"23. I give and bequeath to my executors and their successors in trust fifty (50) shares of the capital stock of the First National Bank of Holdrege, Nebraska, and fifty (50) shares of the preferred stock of the Beatrice Creamery Company, in trust, to collect and receive the dividends and income therefrom, and to pay the dividends and income therefrom annually, or at the time they shall be declared or received, to my son Frank N. Clarke, during his natural life, and at the time of the death of said Frank N. Clarke, I give and bequeath said fifty (50) shares of the capital stock of the First National Bank of Holdrege, Nebraska, and said fifty (50) shares of the preferred stock of the Beatrice Creamery Company, and

the accrued accumulations therefrom to the heirs at law of said Frank N. Clarke, deceased, and direct my said executors or their successors in trust to convey, transfer, deliver and pay the same at said time to his heirs at law, absolutely."

A chronology of events follows: September 25, 1915, will of Alonzo L. Clarke executed; May 3, 1918, testator died at Hastings, Nebraska; June 4, 1918, will probated in county court of Adams county, Nebraska; August 18, 1921, Margaret Dale Clarke, daughter of Cyrus Kingsley Clarke, nephew of testator, adopted in the superior court of Santa Barbara county, California, as the daughter of William H. Clarke and his wife Gertrude Touzlin Clarke under a statute of California; January 29, 1932, Frank N. Clarke, son of testator, died at Hastings, Nebraska; February 7, 1932, William H. Clarke, son of testator, died at Santa Barbara, California.

Alonzo L. Clarke survived his wife and left surviving him his two sons, Frank N. Clarke and William H. Clarke, and one daughter, Lida Clarke Seaton, but no other son or daughter or the child of any deceased son or daughter.

Frank N. Clarke left surviving him his widow, Carrie Detweiler Clarke, and his daughter, Helen Clarke, but no other child or child of any deceased child.

William H. Clarke left surviving him his widow, Gertrude Touzlin Clarke, and his adopted daughter, Margaret Dale Clarke, but no child of his blood.

The beneficiaries of the residuary trust estates of which Frank N. Clarke and William H. Clarke were entitled to the income for life appeared in the suit in equity and presented their claims by formal pleadings.

Margaret Dale Clarke filed an answer and cross-petition in which she pleaded her adoption in the superior court of Santa Barbara county, California, as the daughter of William H. Clarke and his wife Gertrude Touzlin Clarke. She alleged also that she is the heir at law of William H. Clarke, deceased, within the meaning of paragraphs 22 and 27 of the will. Her prayer is as follows:

"Wherefore, she asks the court for a finding and decree in her favor that she is the lawful heir of William H. Clarke, deceased, and that the portion of the residuary trust estate from which the said William H. Clarke received the income during his life, and also the assets for distribution to the heirs of William H. Clarke, deceased, contained in the trust estate created by the 22d paragraph of said will, shall be set apart and transferred to her, and for such further order in the premises as to the court seems just and proper."

The claim of Margaret Dale Clarke is contested by Helen Clarke who alleges she is an heir at law of both sons of testator within the meaning of paragraphs 22, 23 and 27 of the will. At the trial Margaret Dale Clarke proved agreements, court proceedings, a statute of California, and a judgment—all showing her legal adoption as pleaded by her. The judgment of adoption contains an order that the adoptee shall be treated by her adopting parents in all respects as their own lawful child, including the right of inheritance.

The district court adjudged that Gertrude Touzlin Clarke, widow, and Margaret Dale Clarke, adopted daughter, were the only heirs at law of William H. Clarke, deceased, within the meaning of paragraphs 22 and 27 of the will and that each was entitled to one-half of the property and funds of which William H. Clarke received the income during his life. From this judgment Helen Clarke appealed.

Did the trial court err in holding that Alonzo L. Clarke, deceased testator, willed to Margaret Dale Clarke, adopted daughter of his son William H. Clarke, deceased, one-half of the residuary estate of which the latter received the income during his life? A search for precedents on this perplexing question seems to reveal a diversity of judicial opinion. The intention of testator, what was in his mind, the language used, his relationship to the objects of his bounty, the consideration of the entire will, the natural tendency to keep in the channel of descent by blood, the

surrounding circumstances, each and all, are familiar aids in the interpretation, when applied to a particular case. To ascertain the intention of testator is the purpose of interpretation. The technical meaning of words, such as "heirs at law" does not necessarily control, if the intention gathered from all proper sources of inquiry is otherwise. The standpoint of testator, when the will was executed, and whom he might then naturally anticipate as heirs at law of his sons should be kept in mind.

In the effort to uphold the decision below, counsel for Margaret Dale Clarke rely on her adoption as conclusive evidence that she is the "heir at law" of her foster father, within the meaning of the will. In this connection it is argued that the laws of California and Nebraska alike confer the right of inheritance upon the adoptee; that the judgment of adoption requires the adopting parents to treat the adoptee as their own lawful child, including the right of inheritance; that adoption statutes should be liberally construed in furtherance of the beneficent purposes of such legislation; that the adoptee's right of inheritance is the same as the right of a natural child; that it is the duty of the Nebraska courts to give full faith and credit to the judgment of the California court; that the question as to who are heirs at law could not be determined until after the death of William H. Clarke; that there is nothing in the will to indicate the words, "heirs at law," were not used in their ordinary sense; that there is a presumption testator knew the law relating to adoption, drew his will in harmony therewith and understood the usual import of his own words. These propositions were skilfully presented and the brief contains references to numerous cases from different jurisdictions in support of the arguments made. There are, however, obstacles in the course of reasoning indicated.

Testator was a stranger to the adoption. Nearly six years prior thereto he had made his will when the adoptee was a mere child. She had never lived in the home of William H. Clarke, a resident of the Philippine Islands

when the will was made. The adoption was in California. The home of testator was in Hastings, Nebraska. He had been dead more than three years at the time of the adoption. There is nothing in the record to show that he had any knowledge of a purpose on part of his son to adopt a child or that he had any reason to suspect such an event. In using the term "heirs at law" of William H. Clarke, testator may have anticipated the birth of a child of the son's own blood and would naturally have in mind his own granddaughter, Helen Clarke, niece and next of kin of the son. When bequeathing to Gertrude Touzlin Clarke, wife of William H. Clarke, the income from one-eighth of the residuary trust estate, testator willed the residue to the issue of her body by William H. Clarke, thus keeping such residue within the natural channel of descent by blood. If he had no reason to anticipate the adoption of a child, how could he have intended to bequeath property to the adoptee who would not have been entitled to a share of his estate under the statute of descent in absence of a will? If the child had been adopted before his death with his knowledge in time to change his will, the situation would be different. William H. Clarke never had any title to any part of the residuary trust estate of which he received the income during his life. He could not by any instrument of his own making change the course of descent directed by the will. He could not, by adopting a child, determine the intention of his father as expressed in the will. The adoption made the adoptee a legal heir of her adopting father, testator's son, but did not necessarily make her the heir of the adopting son's father, within the meaning of the will. The residuary trust estate in controversy passed to the heirs at law by the will and not by the statute of descent. Of course full faith and credit must be given to the California judgment of adoption in any situation to which it applies. The Constitution of the United States requires that. *Bates v. Bodie,* 245 U. S. 520. It does not follow, however, that a court of California,

by a judgment of adoption, can determine the meaning of a will previously executed and probated in Nebraska. The effect of a judgment of adoption after the execution of a will and after the death of testator was recently considered by an annotator who said:

"The question of the right of a child adopted after the testator's death to take under the will, as under other circumstances, is one of intent upon the part of the testator. The fact that the adoption was subsequent to the testator's death raises a grave presumption against an intention to include such adopted child, and the better rule seems to be that the fact that the testator had no knowledge of the adoption at his death overcomes the presumption that his intention was so to draw his will as to harmonize with the adoption laws." 70 A. L. R. 626.

Under this head the cases are collected and discussed. They seem to show that the weight of authority as well as the better reasoning supports the views quoted. See, 70 A. L. R. 626 *et seq.*

The judgment below, in so far as it determines that Margaret Dale Clarke is an "heir at law" of William H. Clarke, deceased, within the meaning of paragraphs 22 and 27 of the will, and orders distribution to her on that basis, is erroneous and to that extent is reversed and the cause remanded to the district court, with directions to enter a judgment in harmony with this opinion.

The conclusion reached does not disturb that part of the judgment in favor of Gertrude Touzlin Clarke.

REVERSED IN PART.