IN RE TRUST ESTATE OF FRANCES ROBERTS DARLING, DECEASED. JOHN DAVID DARLING ET AL., APPELLANTS, v. ROBERT J. DUDEN AND JOHN R. O'HANLON, TRUSTEES, STEPHEN DARLING ET AL., APPELLEES.

365 N.W.2d 821

Filed April 12, 1985.  No. 84-128.

Gregory P. Drew, for appellant John David Darling.

John H. Bernstein of Dixon Dixon & Minahan, P.C., for appellants Bruce Darling and Mark Hearn.

Virgil J. Haggart, Jr., of Gaines, Otis, Haggart, Mullen & Carta, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Some of the natural children of the late David H. Darling challenge the district court's affirmance of the county court's ruling that Darling's adopted children should share in the testamentary trust established by the last will and testament of Darling's mother. We affirm.

Darling's mother, Frances Roberts Darling, hereinafter referred to as the testatrix, died testate in 1967. Her will, in pertinent part, established a trust which required the trustees

> (l) To pay whatever costs of the funeral and burial of my son David are proper in the judgment of the Trustees and promptly upon his death to divide, distribute and transfer the remaining property of the trust fund equally to the children of the said David H. Darling who survive him. In the event that any of my said grandchildren entitled to

share in my estate under the terms of this, my last will and testament, shall not be of the age of 25 years at the time of the death of my said son, David H. Darling, then and in that event, the share of my estate to which they are entitled shall be held by my trustees, under the provisions of said trust, and paid by said trustees to said grandchildren upon their attaining the age of 25 years.

Darling, the son referred to in the foregoing passage, was married four times. His first marriage produced a son, Stephen, in 1949. Bruce and Mark, born in 1958 and 1960, respectively, were products of Darling's second marriage. The third marriage produced another son, John, in 1966. David married a fourth time, after the testatrix's death, in 1972. In 1977 he adopted his last wife's children, namely, Kimberly Sue, David, and Jayne. Darling then died in December of 1982.

Certain of Darling's four natural children assert the district court erred, in that the interpretation given the trust by the county court violates both the testatrix's intention and the rule against perpetuities. They also urge that the class consisting of Darling's "children" or testatrix's "grandchildren" closed as of the death of the testatrix, thus excluding the adopted children.

The argument concerning the alleged violation of the testatrix's intention rests on the assertion there is a presumption that children adopted after the death of a testator are not meant to be included in the estate. Cited in support of this position is *In re Estate of Clarke*, 125 Neb. 625, 251 N.W. 279 (1933), which quotes with approval from Annot., 70 A.L.R. 626 (1931):

"The question of the right of a child adopted after the testator's death to take under the will, as under other circumstances, is one of intent upon the part of the testator. The fact that the adoption was subsequent to the testator's death raises a grave presumption against an intention to include such adopted child, and the better rule seems to be that the fact that the testator had no knowledge of the adoption at his death overcomes the presumption that his intention was so to draw his will as to harmonize with the adoption laws."

*Id.* at 632, 251 N.W. at 282.

*Clarke* went on to hold that a daughter adopted in California after execution of the will and after the testator's death was not entitled to receive any of the residue of an estate left to her adoptive father's "heirs at law." The opinion reasoned that the phrase "heirs at law" was not to be given a technical meaning but, rather, the meaning intended by the testator. The court concluded that as there had been no familial relationship prior to the testator's death and there was no knowledge on his part that the daughter was to be adopted, the testator had no intention to include her as a beneficiary of the residue.

It is clear, however, that the enactment of Neb. Rev. Stat. § 43-110 (Reissue 1984) negates the *Clarke* holding. Section 43-110 states:

> After a decree of adoption is entered, the usual relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between such adopted child *and the person or persons adopting such child and his, her or their kindred.*

(Emphasis supplied.)

*Neil v. Masterson*, 187 Neb. 364, 191 N.W.2d 448 (1971), decided under the current statute, involved the rights of relatives of the adoptive parents to inherit from the adopted children. The case held the current statute "can only mean that it is the intention of our statute that the next of kin of adoptive parents shall have the same right to inherit property from an adoptive child as they would from a natural child of said adoptive parents." *Id.* at 369, 191 N.W.2d at 451. The reverse of that proposition is equally true; that is, an adopted child, in the absence of specific testamentary directions to the contrary, inherits from the antecedents of an adoptive parent to the same extent as do the adoptive parent's natural children.

It is true, as certain of the natural children argue, that the testatrix could not have known of the adoptions, for she had both executed her will and died before they took place. Her lack of knowledge, however, is not significant. She would have been equally ignorant of any natural children sired by Darling after her death. The important point is that she had no control over who became Darling's children or by what means. She chose to

benefit Darling's children. He elected to make the children produced by his fourth wife his own by adopting them. Having become his, those children qualify as beneficiaries of the testamentary trust.

We turn now to the perpetuities issue. The rule against perpetuities prohibits the creation of future interests or estates which, by possibility, may not become vested within a life or lives in being and 21 years, together with the period of gestation when necessary to cover cases of posthumous birth. *In re Estate of Schmitz*, 214 Neb. 28, 332 N.W.2d 666 (1983).

The trust requires that the trustees "divide, distribute and transfer" the remaining property "equally to the children of the said David H. Darling who survive him." Darling was a life in being, both at the time when the trust was written and at the time it became effective—on the death of the testatrix. With Darling being the measuring life, any interest in his children vested at the instant of his death. In other words, the identity of Darling's children who survived him was ascertainable well within the time limitation of the rule against perpetuities. The language providing that if "any of my said grandchildren entitled to share in my estate . . . shall not be of the age of 25 years at the time of the death of my said son," then their share shall be held by the trustees "and paid by said trustees to said grandchildren upon their attaining the age of 25 years" does not delay vesting beyond the time permitted. This clause merely delays the right of possession and enjoyment of the res until a child's 25th birthday. The rule against perpetuities, by its terms, relates solely to the vesting of estates or interests and is not concerned with their possession or enjoyment. 70 C.J.S. *Perpetuities* § 7 (1951).

"The policy of the law has always been to look with favor upon the early vesting of estates, and a remainder will never be held to be contingent if it can reasonably be held to be a vested remainder." *Wilkins v. Rowan*, 107 Neb. 180, 186, 185 N.W. 437, 439 (1921). The *Rowan* case is directly on point in quoting 2 H. Underhill, A Treatise on the Law of Wills § 860 (1900):

> "Whenever it is possible the future interest will be construed as vested, and hence alienable and devisable by the remainderman. It is not so much the certainty or

uncertainty of the enjoyment of the fee in remainder after the life estate ends as the uncertainty of the person who has a present right to enjoy the future estate if the particular estate came to an end now, which determines the character of the remainder. A remainder is vested if the remainderman, being alive, will take at once if the life tenant were to die. *The fact that his enjoyment is postponed, and, on a certain event, as on his death, may never take place at all, does not make the remainder contingent.* But where there is no person now in being upon whom the enjoyment and possession of the remainder would devolve as a remainderman, if the particular estate were to terminate, the remainder is contingent."

(Emphasis supplied.) 107 Neb. at 186-87, 185 N.W. at 440. In accord, *Gade v. Descendants of Unitt*, 197 Neb. 713, 250 N.W.2d 644 (1977); *Lowry v. Murren*, 195 Neb. 42, 236 N.W.2d 627 (1975); *Tiehen v. Hebenstreit*, 152 Neb. 753, 42 N.W.2d 802 (1950).

The trust provisions do not violate the rule against perpetuities.

Lastly, certain of the natural children argue, in a variety of ways, that the class consisting of Darling's "children" or testatrix's "grandchildren" closed upon the death of the testatrix, thereby excluding the adopted children. They cite numerous cases holding that, *in the absence of a contrary intention*, there is a presumption that the class will be determined upon the death of the testator. For example, *In re Testamentary Trust of Criss*, 213 Neb. 379, 329 N.W.2d 842 (1983). That is a correct statement of the rule. What the natural children ignore is that the language dividing the trust res among "the children" of Darling "*who survive him*" clearly establishes the testatrix's intent to be that the class be determined at the time of Darling's death, not at the time of her own death. (Emphasis supplied.) The rule was correctly applied by the district court.

There being no error, the decree of the district court is affirmed.

AFFIRMED.