**PATHMARK STORES, INC. a Delaware Corporation, Plaintiff,**

v.

**3821 ASSOCIATES, L.P., a Delaware limited partnership, Micron, Inc., a Delaware Corporation, and Raymond W. Tabling, Defendants.**

**CIV. A. No. 13234.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Feb. 1, 1995.
Decided: May 9, 1995.

Daniel R. Losco and Alexandra Pia Brovey of Sawyer & Akin, P.A., Wilmington, for plaintiff.

Richard P. Beck and John T. Meli, Jr. of Morris, James, Hitchens & Williams, Wilmington, for defendants.

## OPINION

STEELE, Vice Chancellor.

This is an action filed by plaintiff Pathmark Stores, Inc. ("Pathmark") against defendants 3821 Associates, L.P., Micron, Inc., and Raymond W. Tabling (collectively "Defendants") for specific performance and breach of contract. Pathmark seeks specific performance of a recorded option to reacquire an unsubdivided parcel of real estate located on Lancaster Avenue in New Castle County, Delaware.

Defendants filed a motion for summary judgment arguing the option clause violates the rule against perpetuities. This is my decision on this motion.

### I. BACKGROUND

At this stage of the proceedings, the facts are taken in the light most favorable to the nonmovant.

On or about July 12, 1980, Supermarkets General Corporation (now known as "Pathmark") and 909 Group L.P. ("909 Group"), entered into an option agreement (the "Option Agreement") giving the 909 Group a five year option to purchase a 4.787 acre parcel of real estate ("Option Parcel"). The Option Parcel is known as Lot No. 2 on the Plan of Lancaster Pike Offices dated March 21, 1983 and is recorded with the New Castle County Recorder's office at Microfilm No. 6686. The parties recorded the Option Agreement with the New Castle County Recorder of Deeds in Deed Record Y, Volume 110. Page 5.

The Option Agreement contained an option for Pathmark to reacquire an unsubdivided portion of the Option Parcel for the expansion of Pathmark's supermarket facility on land adjacent to the Option Parcel. The Option Agreement states:

16. 909 Group agrees to cooperate with Owner in seeking approval for expansion of its building as shown on Exhibit "C" into lands to be conveyed hereunder (or such lesser expansion as Owner may desire). 909 Group covenants and agrees to convey to Owner such portion of the lands subject to this option required for such expansion as shall be approved by New Castle County under its subdivision regulations and the purchase price therefor shall be determined by multiplying the purchase price hereunder ($286,000) by a fraction, the numerator of which is the acreage of the lands to be conveyed by 909 Group to Owner and the denominator of which shall be the total acreage of the lands to be conveyed to 909 Group by Owner hereunder. Owner shall be granted such reasonable easements as shall be necessary for the construction of such building expansion. This option to purchase shall remain in effect for thirty (30) years from the date hereof and shall be exercised by written notice to 909 Group.

On January 25, 1983, the 909 Group and Pathmark amended the Option Agreement (the "Option Amendment"), recorded with the Recorder of Deeds at Deed Book D, Volume 121, Page 339. The Option Amendment modified the size of the Option parcel and clarified the parties' responsibilities pertaining to the use of easements affecting the property.

On April 13, 1983, 909 Group exercised its right to buy the Option Parcel. Pathmark conveyed the land to 909 Group by deed recorded in the Office of the Recorder of Deeds in and for New Castle County, Delaware. This deed stated:

SUBJECT also to option to purchase a portion of the Conveyed Property which option appears of record in the office aforesaid in Deed Record Y, Volume 110,

Page 5 as amended in Deed Record D, Volume 121, Page 339.

909 Group built three condominium office buildings on the Property. 909 Group conveyed one unit to Micron, Inc. by deed dated April 15, 1983 and recorded at Deed Record V, Volume 121, Page 150. 909 Group conveyed another unit to Charles Cantera by deed dated November 16, 1983 and recorded at Deed Record O, Volume 124, Page 342. Charles Cantera was predecessor in title to defendant 3821 Associates, L.P. 909 Group conveyed the third unit to 7 C's, L.P. by deed dated November 16, 1983 and recorded at Deed Record P, Volume 124, Page 117. 7 C's, L.P. was the predecessor in title to defendant Raymond W. Tabling.

In June, 1991, Pathmark notified the Defendants in writing of its intention to exercise its option on the Option Parcel. Defendants refuse to comply with Pathmark's request because the loss of the property might cause the condominiums to have fewer parking spaces and less open space than the New Castle County land use regulations require.

Defendants filed this motion for summary judgment before discovery based upon the contention Pathmark's option violates the rule against perpetuities.

## II. CONTENTIONS OF THE PARTIES

The Defendants argue the option fails as a matter of law because it violates the rule against perpetuities. Defendants argue the option in the defendant's land must vest or fail within twenty-one years because Pathmark's option does not contain a measuring life. Defendants further contend the option does not vest within the required twenty-one years. In support of its' argument, Defendants point to the option provision which indicates the option is effective for thirty years.

Pathmark makes four arguments that the option does not violate the rule against perpetuities. First, Pathmark argues the rule against perpetuities does not apply to options to purchase real estate limited to a specific term. Second, Pathmark argues the rule against perpetuities does not apply to an option capable of invalidation by acts of the

current owner of the land. Third, Pathmark argues the rule against perpetuities does not apply to options when the initial conveyor retains vested property rights in the property. Finally, Pathmark argues its option will vest within twenty-one years of a life in being. Pathmark also invokes the doctrine of equitable estoppel to prevent the Defendants from using the rule against perpetuities to strike down the option.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

■ A motion for summary judgment requires the Court to examine the record to determine whether any genuine issues of material fact exist. *Burkhart v. Davies*, Del. Supr., 602 A.2d 56, 59 (1991), *cert denied,* 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 551 (1992). If, after viewing the record in the light most favorable to the nonmoving party, the Court finds no genuine issue of material fact, summary judgment is appropriate. *See Nash v. Connell,* Del.Ch., 99 A.2d 242, 243 (1953). However, summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962); *Computer Assocs. Int'l, Inc. v. CA Newtrend, Inc.,* Del.Ch., C.A. No. 13091, 1994 WL 39049, Chandler, V.C. (Jan. 31, 1994) Mem. Op. at 4.

## IV. THE RULE AGAINST PERPETUITIES

■ "The rule against perpetuities provides that '[n]o interest is good unless it vests, if at all, not later than twenty-one years after some life in being at the creation of the interest.' " *Stuart Kingston, Inc. v. Robinson,* Del.Supr., 596 A.2d 1378, 1383 (1991) (quoting J. Gray, *The Rule Against Perpetuities* § 201 (4th ed. 1942)). This rule is based on the public policy against restricting the alienability of land. *Id.* The rule is meant to be rigidly enforced. *Id.* Generally, the future interest must necessarily vest within the rule's time limits to be considered valid. *Id.* "If there is any possibility that

the interest will vest beyond the period of the rule, then it is void *ab initio.*" *Id.*

## V. THE RULE AGAINST PERPETUITIES DOES NOT APPLY HERE

█ It is undisputed Pathmark's option to purchase a portion of the Option Parcel is fixed for a term of thirty years. *Stuart Kingston* unequivocally stated:

> Where the parties intend that the option be exercisable only during the life of the holder of the right and that intention may be gleaned from the terms of the agreement creating the option, the rule is not implicated. Similarly, where the agreement does not purport to measure the exercise of the right by the life or lives of the parties but limits its exercise to a term of years, the rule is not offended. *Guaclides v. Kruse*, 67 N.J.Super. 348, 170 A.2d 488 (1961).

*Stuart Kingston*, 596 A.2d at 1384 (emphasis added). The Delaware Supreme Court's statement is unmistakably clear—an agreement creating a future interest which exists for a fixed period of time does not violate the rule against perpetuities.

Defendants argue the Delaware Supreme Court's language and the context of the quoted portion of the *Stuart Kingston* opinion demonstrate the Court meant an agreement limiting the exercise of an option to a "term of years" must be within the twenty-one year time limit required by the rule against perpetuities. In support of their argument, they point to the *Guaclides* opinion, cited by the Supreme Court, and the following additional language from the *Stuart Kingston* opinion: "if there is no measuring life, the interest must vest or fail within twenty-one years." *Stuart Kingston*, 596 A.2d at 1383.

*Stuart Kingston* quite precisely and narrowly held a purported right of first refusal which could be exercised indefinitely violated the rule against perpetuities. *Stuart King-*

ston, 596 A.2d at 1385. During the course of the Court's discussion, the Court stated:

> Similarly, where the agreement does not purport to measure the exercise of the right by the life or lives of the parties but limits its exercise to a term of years, the rule is not offended.
>
> Here, the agreement is conspicuously silent with respect to any temporal limitation on the exercise of first refusal rights in terms of either a specific life of a party or period of years. From the standpoint of the holder of the right, Stuart Kingston, its perpetual existence permits exercise without limitation ... The express terms of the agreement create no limits on the date when the right of first refusal may be exercised.

*Stuart Kingston*, 596, A.2d at 1385 (citations omitted). The opinion does not refer to a right of first refusal which must be exercised within twenty-one years from a life in being. The broad language and Court's discussion concerning the existence of a temporal limitation leads me to believe the Supreme Court meant what it stated—if an option may only be exercised by the holder of the right for a term of years, the option will not violate the rule against perpetuities.[1]

The Delaware Supreme Court articulated a very modern view. The more traditional view declares options in gross[2] invalid, unless the option is limited to a time less than the rule against perpetuities period. *See* J. Gray, *The Rule Against Perpetuities* § 330 (4th ed. 1942); VI Thomas E. Atkinson et al., *American Law of Property* § 24.56 at 139 (A. James Casner ed. 1952); 5A Richard R. Powell, *Powell on Real Property* ¶ 771[2] at 72–90 (Patrick J. Rohan ed. 1992). The application of the rule against perpetuities to options is subject to severe criticism. *See* VI Thomas E. Atkinson et al., *American Law of Property* § 24.56 at 141 (A. James Casner ed. 1952) ("The application of the rule against

---

1. The fact *Guaclides v. Kruse*, 67 N.J.Super. 348, 170 A.2d 488, *cert. denied*, 36 N.J. 32, 174 A.2d 658 (1961), involved a five year agreement which the parties extended for an additional term of ten years, six years short of the Rule Against Perpetuities period of twenty-one years, is unimportant when viewed against the Delaware Supreme

Court's clear statement of the rule regarding options with a fixed duration.

2. Option in gross is the technical term for options not connected to a lease.

perpetuities to options was a step of doubtful wisdom."); Lewis M. Simes et al., *The Law of Future Interests* § 1244 at 159 (2d ed. 1956) ("As an original proposition, it might have been better for the courts to hold that all option contracts are outside the rule against perpetuities."); *see also* T. Bergin et al., *Preface to Estates in Land and Future Interest* at 207–08 (2d ed. 1984) ("[T]he rule against perpetuities is obviously not suited to the commercial transaction.").

At least one English court has attempted to wrestle with the many problems accompanying the application of the rule against perpetuities to options by bifurcating the option into a contractual right and an interest in land. *Worthing Corp. v. Heather,* Ch.Div., 2 Ch. 532, 543 (1906). The Court held the interest in land invalid but granted damages on the theory that the contract was valid. *Id.; see* J. Gray, *The Rule Against Perpetuities* § 330.1 (4th ed. 1942). Most treatises reject granting damages for an invalid option based on a "breach of contract" theory because this approach is based more on fiction than reality. *See* Lewis M. Simes et al., *The Law of Future Interests* § 1244 at 161 (2d ed. 1956); VI Thomas E. Atkinson et al., *American Law of Property* § 24.56 at 143 (A. James Casner ed. 1952); 5A Richard R. Powell, *Powell on Real Property* ¶ 771[3] (Patrick J. Rohan ed. 1992). The better view, as adopted by the Delaware Supreme Court, is to simply recognize the validity of the option.

The common law rule against perpetuities time period, lives in being plus twenty-one years, is well suited for keeping family transfers of property within a reasonable time period. This common law time period is tied to notions of when a person will attain the age of majority. Commercial transactions, however, have absolutely no tie to either lives in being or twenty-one years. *See* T. Bergin et al., *Preface to Estates in Land and Future Interest* at 207–08 (2d ed. 1984). As one treatise has stated:

> The dividing line between reasonable and unreasonable options should be based upon the realities of commerce in land, not upon

a borrowing from the law of family settlements.

VI Thomas E. Atkinson et al., *American Law of Property* § 24.56 at 142 (A. James Casner ed. 1952). As the Delaware Supreme Court has implicitly determined, an unlimited time period is unreasonable. *See Stuart Kingston,* 596 A.2d at 1385. However, when two commercial entities explicitly create an option for a particular time period, the entities are obviously focusing on the reasonable time period necessary for the commercial development of the property. Therefore, it is proper to enforce an option in gross which limits its exercise to a term of years. Denying the parties this flexible tool may remove property from commerce entirely, defeating the general public policy against restricting the alienability of interest in land. *See id.* at 1383. In sum, sound public policy reasons strongly support the Delaware Supreme Court's announced rule in *Stuart Kingston.*

It would be inequitable to declare this option void *ab initio*. Two commercial entities have bargained for the option to repurchase, each presumably gaining and losing contractual advantages during the negotiation process to reach this agreement. Here Pathmark not only attempts to exercise the option within the duration of the option, but even within the time limit required by the common law rule against perpetuities. Allowing defendants to escape the terms of the contract because Pathmark *might* exercise the option in an unreasonably remote way defies the contract's terms, logic, common sense, public policy and principles of equity.

## VI. CONCLUSION

The Delaware Supreme Court, in *Stuart Kingston,* clearly stated the rule that an agreement limiting the exercise of a property right to a term of years does not offend the rule against perpetuities. Pathmark's option is explicitly limited to a term of thirty years. Therefore, the Pathmark option does not violate the rule against perpetuities. Consequently, defendant's motion for summary

judgment is *denied.*[3]

**IT IS SO ORDERED.**

**3.** Because the resolution of this issue is disposi-tive of Defendants' Motion for Summary Judg-ment, there is no need to address the other issues raised by Pathmark.