783 N.W.2d 594 (2010)
280 Neb. 1
Dorothy L. BAUERMEISTER et al., appellees,
v.
WASTE MANAGEMENT CO. OF NEBRASKA, INC., appellant, and
Nature's Works, LLC, et al., appellees.
No. S-09-019.
Supreme Court of Nebraska.
June 18, 2010.
*595 Thomas A. Grennan and Francie C. Riedmann, of Gross & Welch, P.C., L.L.O., and Ronald R. Volkmer, of McGill, Gotsdiner, Workman & Lepp, Omaha, for appellant.
David A. Domina, of Domina Law Group, P.C., L.L.O., Omaha, and Matt R. Deaver, of Deaver Law Office, for appellees Dorothy L. Bauermeister et al.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
In this case on further review, Fred and Dorothy L. Bauermeister and Richard and Clara E. Deaver sought to repurchase their land from Waste Management Co. of Nebraska, Inc. (Waste Management), pursuant to the "Seller's Option to Buy" clause in the purchase agreement. The district court for Douglas County concluded that the clause was enforceable and quieted titled in favor of Fred, Dorothy, Richard, and Clara. On appeal, the Nebraska Court of Appeals concluded that because the option violated the rule against perpetuities, it was void, and reversed the order of the district court. On further review, we conclude that because the rule against perpetuities is inapplicable to this contractual option, the option is enforceable. We therefore reverse the ruling of the Court of Appeals and remand with directions to consider the remaining assignments of error.

STATEMENT OF FACTS
The following facts, which are supported by the record, come largely from the memorandum opinion of the Court of Appeals. See Bauermeister v. Waste Mgmt. Co., No. A-09-019, 2009 WL 6473172 (Neb.App. Dec.8, 2009) (selected for posting to court Web site). On March 22, 1989, Fred, Dorothy, Richard, and Clara executed a purchase agreement, pursuant to which Waste Management purchased 280 acres of separately owned but contiguous tracts of real property in Douglas County, Nebraska. Waste Management purchased the property to develop a landfill site, and the property was so used by Waste Management from 1989 until 2003.
In the agreement, the word "Seller" referred to Fred, Dorothy, Richard, and Clara and their heirs, successors, and assigns, and the word "Purchaser" referred to Waste Management. The purchase agreement between the parties contained a "Seller's Option to Buy," in paragraph 30, which stated:
If Seller(s), their successors or heirs so choose, Seller(s) shall have the option to repurchase all or any portion of the Premises from Purchaser in consideration for the sum of One Dollar ... at the termination, for any reason, of this Agreement, and Purchaser shall be obligated to sell the Premises to Seller(s), their successors or heirs, if they so choose. Seller's option may be exercised from the date of termination of the Landfill until two years after the date of termination of the required monitoring of the Landfill pursuant to Paragraph 16.
Separate option agreements were executed evidencing the parties' agreement and for recordation purposes. The agreement also provided at paragraph 20 that Fred, Dorothy, Richard, and Clara could sell the options, upon the same conditions *596 as enjoyed by them, upon satisfactory notice to Waste Management.
Fred died in 2004, and on April 6, 2005, Dorothy, as trustee of Fred's trust, executed an "Instrument of Distribution of Personal Property" conveying the interest in the Waste Management purchase agreement and option to Fred and Dorothy's sons, subject to Dorothy's life use.
Richard died in 2002. Clara was named in Richard's will as his personal representative, and his estate was closed in 2007. Clara died during these proceedings, and the case was revived.
In 2003, Waste Management discontinued using the land at issue as a landfill, which prompted the required monitoring time period as discussed in the option set forth above. Pursuant to federal and state laws, a landfill's postclosure care and monitoring must begin after a landfill is closed and continues for 30 years after that closure date.
On August 31, 2006, Dorothy and Clara signed a document entitled "Notice of Intent to Exercise Seller's Option to Buy." The notice attempted to put Waste Management on notice that Dorothy, in her own behalf and as surviving spouse of Fred, and Clara, in her own behalf and as surviving spouse of Richard, were jointly and severally exercising the option to repurchase the land pursuant to the purchase agreement with Waste Management. Waste Management took the position that the "Seller's Option to Buy" was not properly executed, and did not deliver the deed to the land to either Dorothy or Clara.
On October 17, 2006, Dorothy and Clara filed a complaint in the district court for Douglas County seeking specific performance and an accounting. Dorothy and Clara alleged that they had properly executed the option to repurchase and that Waste Management was obligated to execute the deed for the land back to them. Waste Management denied the allegations in the complaint and alleged that Dorothy and Clara were not the real parties in interest.
On October 18, 2007, Dorothy and Clara made a second attempt to exercise the option to repurchase by sending three letters to Waste Management. In late 2007, Dorothy, Fred and Dorothy's sons, and Clara (collectively appellees) filed an amended complaint in the district court for specific performance, accounting, quiet title, and declaratory judgment. Waste Management answered and, inter alia, asserted affirmative defenses, including that some or all of the appellees were not real parties in interest or lacked standing, the option to repurchase was void because it violated the common-law rule against perpetuities, and the amended complaint failed to state a claim upon which relief could be granted.
A trial was held. The district court entered an order filed December 10, 2008, in which it determined that Dorothy and Clara, and their heirs, clearly intended to exercise the option to repurchase in each of their respective capacities and that therefore, as real parties in interest, they had validly exercised the option. The district court ordered Waste Management to immediately convey title to the land through a warranty deed back to appellees. The district court found no merit to Waste Management's affirmative defenses. Accounting issues are the subject of another action. Waste Management appealed.
On appeal, the Court of Appeals concluded that the "Seller's Option to Buy," sought to be exercised by appellees, violated the rule against perpetuities and was void. Because resolution of this issue invalidated the option and resolved the case, the Court of Appeals did not reach the remaining assignments of error. The *597 Court of Appeals reversed the order of the district court. Appellees petitioned for further review, which this court granted.

ASSIGNMENT OF ERROR
In their petition for further review, appellees claim, restated and summarized, that the Court of Appeals erred by concluding that the option to repurchase was void under the common-law rule against perpetuities.

STANDARD OF REVIEW
When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the lower court. See Kuhn v. Wells Fargo Bank of Neb., 278 Neb. 428, 771 N.W.2d 103 (2009).

ANALYSIS
For purposes of our review, the sole issue before this court is whether the rule against perpetuities invalidates the option to repurchase in the agreement between appellees and Waste Management. The Court of Appeals concluded that because the agreement was signed a few months prior to the effective date of the Nebraska statutory rule against perpetuities, this case is governed by the common-law rule against perpetuities. The parties do not dispute this conclusion, and we agree that the common law governs.
As an initial matter, we note that the common-law rule against perpetuities prohibits the creation of future interests or estates which, by possibility, may not become vested within a life or lives in being and 21 years, together with the period of gestation when necessary to cover cases of posthumous birth. In re Trust Estate of Darling, 219 Neb. 705, 365 N.W.2d 821 (1985). It has been observed that the rule is based on the public policy against restricting the alienability of land. See Stuart Kingston, Inc. v. Robinson, 596 A.2d 1378 (Del.1991).
In deciding this case, the Court of Appeals understandably relied on our opinion in Rice v. Lincoln & N.W.R. Co., 88 Neb. 307, 129 N.W. 425 (1911). Rice, however, was decided nearly a century ago, and that portion of Rice to which the Court of Appeals referred was dictum. Rice suggested that the rule against perpetuities would be applicable to an option under certain facts.
Relying on Rice, the Court of Appeals determined that the lives in being at the creation of the option, which is the future interest at issue in this case, were Fred, Dorothy, Richard, and Clara and that the option also could be exercised by their "successors or heirs." The Court of Appeals stated that the inclusion of the successors or heirs "ensures that there is a possibility that the option to purchase would reach beyond the [Seller's] death and 21 years, thus violating the rule against perpetuities and rendering the option void." Bauermeister v. Waste Mgmt. Co., No. A-09-019, 2009 WL 6473172 at *4 (Neb.App. Dec.8, 2009) (selected for posting to court Web site).
The Court of Appeals further observed that the language limiting the option to 2 years after the date of termination of the required monitoring of the landfill did not prevent the option from violating the rule against perpetuities. The Court of Appeals noted that the evidence showed federal and state regulations require a 30-year landfill postclosure monitoring period and reasoned that because the option gave the "Seller" an additional 2 years after the monitoring period to exercise the option, the total duration of the option in this case was extended to 32 years.
On further review, appellees, as sellers and holders of the option to repurchase, *598 argue that the decision by the Court of Appeals should be reversed because the modern trend in the common law applicable to this case, with respect to the application of the rule against perpetuities to contractual options, is to avoid strict application of the rule. Appellees suggest the better reasoned cases show that the rule against perpetuities is not appropriately applied to options and that effectuation of the parties' intentions to create a commercially viable and enforceable option is sound law. Appellees also note that the option at issue can be sold, which shows that its objective was commercial in nature and not donative. Waste Management argues that the rule against perpetuities applies to options and that the option contained in the purchase agreement is void. Accordingly, Waste Management urges us to affirm the ruling of the Court of Appeals. For the reasons explained below, we reverse the decision of the Court of Appeals.
Our analysis is informed by reviewing the context and timeframe during which the option at issue in this case was negotiated by the parties. The option was created in a contract signed and agreed to by the parties in March of 1989. In the agreement, Fred, Dorothy, Richard, and Clara agreed to sell 280 acres of their land to Waste Management to develop as a landfill. Paragraph 30 of the agreement included the "Seller's Option to Buy," stating in relevant part that
Seller(s) shall have the option to repurchase all or any portion of the Premises from Purchaser in consideration for the sum of One Dollar. ... Seller's option may be exercised from the date of termination of the Landfill until two years after the date of termination of the required monitoring. ...
Paragraph 20 of the agreement provides that the "Seller" had the right to sell the option if "such purchaser, transferor or lienholder takes, subject to all terms and conditions of this Agreement," and Waste Management is provided proper notice. Separate option agreements were also signed.
Subsequent to the execution of the agreement, and the separate option agreements, the Nebraska version of the Uniform Statutory Rule Against Perpetuities Act (Act) became effective. See Neb.Rev. Stat. §§ 76-2001 through 76-2008 (Reissue 2009). The effective date of the Act was about 5 months after the option at issue was agreed upon. The Act excluded from the rule's coverage options such as the one in this case. See § 76-2005(1) (stating that rule against perpetuities does not apply to "[a] nonvested property interest or a power of appointment arising out of a nondonative transfer"). The Act has been widely adopted. After the enactment of the Act elsewhere, a California appellate court succinctly stated, "The rule is now irrelevant to [commercial] transactions...." Shaver v. Clanton, 26 Cal. App.4th 568, 574, 31 Cal.Rptr.2d 595, 598 (1994). The California court explained the purpose of this exclusion by citing commentators as follows:
"It makes no sense to apply a rule based on family-oriented donative transfers to interests created by contract whose nature is determined by negotiations between the parties." [See Recommendation Relating to Uniform Statutory Rule Against Perpetuities, 20 Cal. Law Revision Com. Rep. (1990) 2501, 2516.] "The rationale for this exclusion is that the rule against perpetuities is a wholly inappropriate instrument of social policy to use as a control over such arrangements. The period of the rule  a life in being plus 21 years  is not suitable for nondonative transfers. ..." (1991 Addition to Law Revision Com. Com., 54A *599 West's Ann.Prob.Code § 21225 (1994 pocket supp.) p. 60....
Shaver, 26 Cal.App.4th at 574, 31 Cal. Rptr.2d at 598.
The provision in the Act excluding the application of the rule against perpetuities to commercial options was the logical outcome of years of jurisprudence critical of applying the rule against perpetuities to commercial transactions. As early as 1952, one commentator stated that applying the rule to options completely disregards the purpose of the rule, namely, to prevent extraordinarily protracted family settlements and devolution of decedents' estates. See W. Barton Leach, Perpetuities in Perspective: Ending the Rule's Reign of Terror, 65 Harv. L.Rev. 721 (1952).
In a similar vein, the Restatement (Third) of Property: Servitudes § 3.3, comment b. at 428 (2000), explains as follows:
In the late 19th century, ... courts began to apply [the rule against perpetuities] to commercial land transactions, including options [and] rights of first refusal. ... The virtue of the rule was that it invalidated all interests that lacked a durational limit, thus clearing titles without any need to inquire into the utility of the arrangement. Its vice was that it operated arbitrarily, applying a time period totally unsuited to commercial transactions. ...
Although commentators had long complained that the rule against perpetuities should not be applied to commercial transactions, it was not until the 1980s that courts in any number followed suit.
In Pathmark Stores v. 3821 Associates, L.P., 663 A.2d 1189 (Del.Ch.1995), the Delaware Court of Chancery determined that the rule against perpetuities was not offended by the contractual option at issue in that case. In support of its conclusion, the Delaware court referred to various commentators and stated:
The application of the rule against perpetuities to options is subject to severe criticism. See VI Thomas E. Atkinson et al., American Law of Property § 24.56 at 141 (A. James Casner ed. 1952) ("The application of the rule against perpetuities to options was a step of doubtful wisdom."); Lewis M. Simes et al., The Law of Future Interests § 1244 at 159 (2d ed. 1956) ("As an original proposition, it might have been better for the courts to hold that all option contracts are outside the rule against perpetuities."); see also T. Bergin et al., Preface to Estates in Land and Future Interest at 207-08 (2d ed. 1984) ("[T]he rule against perpetuities is obviously not suited to the commercial transaction.").
Pathmark Stores, 663 A.2d at 1192-93.
The Delaware court further noted:
The common law rule against perpetuities time period, lives in being plus twenty-one years, is well suited for keeping family transfers of property within a reasonable time period. This common law time period is tied to notions of when a person will attain the age of majority. Commercial transactions, however, have absolutely no tie to either lives in being or twenty-one years.
Id. at 1193.
Reflecting this evolution recounted above, the Restatement, supra, determined that the rule against perpetuities is inapplicable to options to repurchase such as the one at issue in this case.
As noted, the Legislature enacted the Act in 1989. The Act demonstrates the policy adopted by the Legislature, and pursuant to the Act, the option at issue would not be subject to the rule against perpetuities. The Act adopted in Nebraska *600 reflected the scholarly opinion and jurisprudence which had evolved over the decades prior to its passage. The instant case is our first opportunity to comment on the application of the rule against perpetuities to a commercial option since passage of the Act. We conclude that the application of the common-law rule against perpetuities which governs this case is no broader than that imposed by the statutory rule enacted by the Legislature, and thus, the option at issue is not subject to the rule against perpetuities. Our decision is consistent with the courts and commentators, noted above, who have observed that the purposes supported by the rule against perpetuities do not logically apply to commercial transactions such as options.
There are sound public policy reasons which support the conclusion that contractual options to repurchase, such as the one at issue in this case, are not subject to the rule against perpetuities. The option at issue is the result of a commercial transaction. It is more appropriately analyzed "based upon the realities of commerce in land, not upon a borrowing from the law of family settlements." VI Thomas E. Atkinson et al., American Law of Property § 24.56 at 142 (A. James Casner ed.1952). In Pathmark Stores v. 3821 Associates, L.P., 663 A.2d 1189, 1193 (Del.Ch.1995), the Delaware Court of Chancery stated:
It would be inequitable to declare this option void ab initio. Two commercial entities have bargained for the option to repurchase, each presumably gaining and losing contractual advantages during the negotiation process to reach this agreement. Here Pathmark not only attempts to exercise the option within the duration of the option, but even within the time limit required by the common law rule against perpetuities. Allowing defendants to escape the terms of the contract because Pathmark might exercise the option in an unreasonably remote way defies the contract's terms, logic, common sense, public policy and principles of equity.
The same reasoning applies to the instant case.
It would not be prudent to now deny appellees the benefit of their bargain while allowing Waste Management to avoid the terms of the agreement. In concluding that the rule against perpetuities does not apply to this option, we merely hold the parties to the terms of their contractual arrangement. Based on the foregoing, we reverse the decision of the Court of Appeals.

CONCLUSION
Because we conclude that the common-law rule against perpetuities is inapplicable to the option at issue, we reverse the decision of the Court of Appeals and remand with directions to consider the remaining assignments of error not previously considered by the Court of Appeals.
REVERSED AND REMANDED WITH DIRECTIONS.