[907 NYS2d 603]

Raisa Rozina et al., Plaintiffs, v Casa 74th Development LLC et al., Defendants.

Supreme Court, New York County, August 27, 2010

APPEARANCES OF COUNSEL

*Starr Associates LLP*, New York City (*Andrea Roschelle* of counsel), for defendants. *Tsyngauz & Associates, P.C.*, New York City (*Michael Treybich* of counsel), for plaintiffs.

## OPINION OF THE COURT

MARCY S. FRIEDMAN, J.

In this action, plaintiffs Raisa Rozina and Eduard Gorenshteyn seek rescission of an option agreement to purchase a condominium unit in defendant Casa 74th Development LLC's (Casa 74th) building, and for return of their down payment. Casa 74th and defendant Starr Associates LLP (Starr), its escrow agent, move for summary judgment dismissing the complaint and for judgment granting their counterclaim for attorney's fees.[1]

A brief recitation of the facts is as follows: plaintiffs entered into an option agreement with Casa 74th, dated November 21, 2007, to purchase a condominium unit, in a building being constructed, for $4,284,750, of which $840,000 was paid by plaintiffs as a down payment. (Doc supp to defendants' motion [defendants' motion], exhibit A.) Plaintiffs failed to appear at the closing scheduled on December 12, 2008, and were notified by defendants that they were in default of their obligations under the option agreement. (*See id.*, exhibits C, D, E.) Plaintiffs then commenced this action by filing a summons and complaint on January 16, 2009, and contemporaneously moved for a preliminary injunction enjoining defendants from enforcing the option agreement or, in the alternative, staying plaintiffs' time to cure their default if the agreement were found to be enforceable. By order dated May 29, 2009, this court held that plaintiffs failed to show a likelihood of success on the merits in support of their claim that the option agreement violates the rule against perpetuities, and accordingly denied plaintiffs' motion. While the court vacated the temporary restraining order it had previously issued, it directed defendants to serve a new notice to cure based on the parties' December 22, 2008 "standstill agreement." (May 29, 2009 order at 6.)[2] Defendants served a new notice to cure which required plaintiffs to close title by July 6, 2009. (Defendants' motion, exhibit H.) However, as is undisputed by plaintiffs, they failed to close title by that date.

1. Plaintiffs and defendants seek various forms of declaratory relief in the complaint and answer, respectively. These claims will be addressed below.

2. The court further denied defendants' claim for attorney's fees, without prejudice to renewal at the time of trial or other resolution of this action.

The standards for summary judgment are well settled. The movant must tender evidence, by proof in admissible form, to establish the cause of action "sufficiently to warrant the court as a matter of law in directing judgment." (CPLR 3212 [b]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980].) "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers." (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985].) Once such proof has been offered, to defeat summary judgment "the opposing party must 'show facts sufficient to require a trial of any issue of fact' (CPLR 3212, subd. [b])." (*Zuckerman*, 49 NY2d at 562.)

Plaintiffs' complaint rests primarily on the theory that the option agreement is unenforceable because it does not provide an end date by which a notice of closing must be served or title must vest, and therefore violates the rule against perpetuities. The rule against perpetuities is codified in EPTL 9-1.1. Subdivision (b), the prohibition against remote vesting, states in pertinent part: "No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being." Subdivision (b) is "a rigid formula that invalidates any interest that may not vest within the prescribed time period." (*Symphony Space v Pergola Props.*, 88 NY2d 466, 476 [1996] [internal quotation marks and citation omitted].) The rule against perpetuities is, however, subject to the rules of construction set forth in EPTL 9-1.3 (a) and (d), which provide:

"Unless a contrary intention appears . . .

"(d) Where the duration or vesting of an estate is contingent upon the probate of a will, the appointment of a fiduciary, the location of a distributee, the payment of debts, the sale of assets, the settlement of an estate, the determination of questions relating to an estate or transfer tax or *the occurrence of any specified contingency*, it shall be presumed that the creator of such estate intended such contingency to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate." (Emphasis added.)

This "saving statute requires that we construe the option in such a way as to avoid invalidating it." (*Scutti Enters. v Wackerman Guchone Custom Bldrs.*, 153 AD2d 83, 88 [4th Dept 1989], *lv denied* 75 NY2d 709 [1990].) The statute is "designed to prevent the problem . . . created by an instrument's reference to a specified event which ordinarily would take a short time to occur but which theoretically could take more than 21 years." (*Id.* at 89.)

Where an option agreement "contains no limitation on duration nor words suggesting that the parties intended the extent of its life to be anything other than indefinite," the agreement violates the rule against remoteness in vesting. (*Buffalo Seminary v McCarthy*, 86 AD2d 435, 444 [4th Dept 1982], *affd for reasons stated below* 58 NY2d 867 [1983].) Under such circumstances, EPTL 9-1.3 will not be applied to save the instrument. (*See id.*; *Symphony Space*, 88 NY2d at 481-482.)

While plaintiffs are correct in arguing that this court's denial of a preliminary injunction is not law of the case (*see J. A. Preston Corp. v Fabrication Enters.*, 68 NY2d 397, 402 [1986]), on this more fully developed record, plaintiffs fail to raise a triable issue of fact as to whether the option agreement violates the rule against perpetuities. The court remains unpersuaded by plaintiffs' contention that the option agreement evidences an intention for the estate to vest after 21 years. The option agreement does not provide an unlimited time for plaintiffs' exercise of the option. It requires the sponsor to give the purchasers no less than 30 days' prior written notice of a closing date (option agreement ¶ 6.1), and expressly provides that in the event the purchasers fail to attend the closing and exercise their option, the agreement "shall be deemed cancelled" and the sponsor shall be entitled to retain the down payment. (*Id.* ¶¶ 6.3, 13.1.) Contrary to plaintiffs' implicit contention, the vesting event is not defendants' service of a notice of closing, for which the option agreement does not contain an express deadline. Rather, the vesting event is plaintiffs' exercise of their option (*see Scutti*, 153 AD2d at 89; *see also Buffalo Seminary*, 86 AD2d at 447 n 10), which is required to take place on the closing date.

Although the option agreement by its terms enures to the benefit of the parties' "successors and assigns" (option agreement art 38), this terminology does not evidence an option of unlimited duration given that the option agreement otherwise imposes the limitation that the option be exercised on the closing date. (*Compare Buffalo Seminary*, 86 AD2d at 444-445; *Barnes v Oceanus Nav. Corp., Ltd.*, 21 AD3d 975 [2d Dept 2005].) As the duration for plaintiffs' exercise of the option is not unlimited, the option agreement does not contravene EPTL 9-1.1 (b).[3]

---

**3.** It is noted that the rationale for the rule prohibiting remote vesting is "that it is socially undesirable for property to be inalienable for an unreasonable period of time. [The rule] thus seek[s] to ensure the productive use and

Moreover, to the extent that plaintiffs' exercise of the option depends on a contingency, EPTL 9-1.3 is applicable to validate the option agreement. As the option agreement does not evidence a contrary intent, where the vesting of an estate is contingent upon "the occurrence of any specified contingency," it is presumed, pursuant to section 9-1.3 (d), that the sponsor intended such contingency to occur within 21 years of the agreement's execution. Here, it clearly appears from the face of the offering plan that contingencies to closing were expected to occur within a relatively short period of time after the date of execution of the option agreement.

For example, pursuant to 13 NYCRR 20.3 (h), setting forth disclosure requirements for condominium offering plans, the sponsor of new condominium construction must evidence its intent as to when the condominium will be operational by designating a budget year. The sponsor must also state the date by which the sponsor expects the first closing of a unit to occur, and such first closing should correspond to the first year of projected condominium operation. (See 13 NYCRR 20.3 [o] [11]-[12].) The filing date of defendant's offering plan was May 24, 2007 and, per schedule B of the offering plan, defendant projected that the first full year of condominium operation would begin on January 1, 2009. Another contingency to closing, as stated on page 75 of the offering plan, obligates the sponsor to offer purchasers the right to rescind their option agreements if the first closing does not occur within 12 months after the January 1, 2009 date set forth in schedule B. Moreover, the "Rights and Obligations of Sponsor" section of the offering plan, on page 95, requires the sponsor to obtain a temporary certificate of occupancy prior to the first closing, and to attempt to obtain a permanent certificate within two years after the first closing. Therefore, as indicated by the offering plan, the vesting of plaintiffs' estate is dependent on contingencies that were intended to occur well within the perpetuities period.

As plaintiffs fail to raise any other triable issue of fact concerning the enforceability of the option agreement, their first through fourth causes of action will be dismissed.

---

development of property by its current beneficial owners by simplifying ownership, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability." (*Symphony Space*, 88 NY2d at 475 [internal quotation marks and citations omitted].) Here, of course, plaintiffs' right to restrict defendants' transfer of the property to another buyer is sharply limited by the sponsor's right and obligation to set a deadline for closing.

Defendants also make a prima facie showing of entitlement to judgment dismissing plaintiffs' remaining claims. As evidenced above, Casa 74th complied with its obligations under paragraph 6.1 of the option agreement, requiring it to designate the closing of title by written notice to plaintiffs. As plaintiffs failed to close on the designated date, and failed to cure their default within 30 days, Casa 74th was permitted to cancel the option agreement and retain plaintiffs' down payment. (Option agreement ¶¶ 6.3, 13.2.)[4]

In opposition, plaintiffs first contend that defendants breached the option agreement because they were not ready to tender performance on the closing date. Specifically, plaintiff Raisa Rozina claims that when she, her attorney's paralegal, and her contractor/interior designer viewed the unit on December 12, 2008, they discovered that defendants had made material alterations to the layout of the windows in plaintiffs' unit. (Aff of Raisa Rozina in opposition ¶ 27; aff of Eduard Skutelsky [paralegal] in opposition ¶¶ 15-16.) Plaintiffs further contend that these alterations deviated from the specifications in the offering plan, and have "substantially and negatively impacted the light, area, and the possible use of the space therein." (Rozina aff ¶¶ 21-22, 27.) Plaintiffs also claim that these alterations were made without filing an amendment to the offering plan. (*Id.* ¶ 27.)

However, plaintiffs do not offer any competent evidence, such as an affidavit of an engineer or architect, to substantiate these conclusory assertions that the placement of the windows was materially altered from the specifications in the offering plan. Plaintiffs do not provide any photographs of the windows, nor an affidavit from Ms. Rozina's contractor, Igor Zagranichny, the only arguably qualified professional who viewed the unit with Ms. Rozina. Plaintiffs submit the affidavit of a different contractor, Joseph Klaynberg, who states that it would be infeasible to change the layout of the windows. However, this contractor does not claim to have viewed the windows and does not offer the opinion that the windows, as installed, deviated from the specifications in the offering plan. (*See* Klaynberg aff ¶¶ 6-8.)

---

4. Contrary to plaintiffs' contention, defendants' right to summary judgment is not defeated because their "supporting proof was placed before the court by way of an attorney's affidavit" annexing documentary evidence "rather than affidavits of fact on personal knowledge." (*See Olan v Farrell Lines*, 64 NY2d 1092, 1093 [1985]; *Eldon Group Am. v Equiptex Indus. Prods. Corp.*, 236 AD2d 329 [1st Dept 1997].)

Plaintiffs therefore fail to raise a triable issue of fact as to whether the windows were materially altered in breach of the offering plan and option agreement.[5]

In so holding, the court rejects plaintiffs' contention that defendants' summary judgment motion should be held in abeyance pending discovery. While plaintiffs seek an inspection of the unit by an engineer, they fail to explain why, after they discovered the alleged alterations of the window placement during their December 12, 2008 inspection, they did not promptly seek a further inspection with an expert. Notably also, in their December 19, 2008 letter to defendants seeking rescission of the option agreement, they did not mention the window alterations and claimed solely that the option agreement was unenforceable based on the rule against perpetuities and the allegedly defective notice to close title. (Defendants' reply, exhibit A.)

Thus, plaintiffs' ninth cause of action, alleging that the apartment was not built in compliance with the representations in the offering plan and option agreement, will be dismissed.

Plaintiffs' additional claims are without merit. Plaintiffs do not submit any arguments in opposition to the branch of defendants' motion for dismissal of the fifth and sixth causes of action alleging the invalidity of the closing notices. The seventh cause of action, seeking a stay of plaintiffs' time to cure their default, was determined by this court's decision dated May 29, 2009.

Plaintiffs' eighth cause of action alleges that the liquidated damages provision in the option agreement is unenforceable. Courts have consistently upheld liquidated damages clauses which give a sponsor the right to retain a real estate down payment from a purchaser if the purchaser defaults, unless there is a showing of a "disparity of bargaining power between the parties, duress, fraud, illegality or mutual mistake." (*Uzan v 845 UN Ltd. Partnership*, 10 AD3d 230, 237 [1st Dept 2004]; *see Regal Realty Servs., LLC v 2590 Frisby, LLC*, 62 AD3d 498, 502 [1st Dept 2009].) It is undisputed that the option agreement

5. While plaintiffs fail to submit competent evidence to raise a triable issue of fact as to whether the windows materially deviated from the specifications in the offering plan, it is noted that defendants submit the affidavit of Gloria Glas, the architect for the building, attesting that the "make, model and size of the windows installed were identical to those that were disclosed in the property description contained in the Plan," "installed precisely in the locations set forth on the Plans and Specifications," and that "[t]here were no changes whatsoever that affected the light, views or ventilation." (Glas aff in reply ¶ 2.)

was negotiated at arm's length by plaintiffs' and defendants' respective attorneys, and plaintiffs otherwise do not allege duress, fraud, illegality or mutual mistake. Thus, this cause of action will be dismissed.

Lastly, plaintiffs fail to oppose dismissal of, and fail to provide any basis in support of, their tenth cause of action seeking a permanent injunction enjoining defendants from enforcing the option agreement. Accordingly, this claim will be dismissed.

Plaintiffs do not oppose the branch of defendants' motion seeking a judgment on their counterclaims, which are for attorney's fees and declaratory relief. Paragraph 30 of the option agreement provides that plaintiffs are obligated to reimburse Casa 74th for legal fees incurred in defending or enforcing its rights under the agreement. Defendants thus are entitled to reasonable attorney's fees as the prevailing parties in this action.

Accordingly, it is hereby ordered that the motion of defendants Casa 74th Development LLC and Starr Associates LLP for summary judgment is granted to the extent that the complaint is dismissed and defendants are granted a judgment on their counterclaim for attorney's fees and declaratory relief as follows:

It is ordered, adjudged, and declared that the option agreement is enforceable; and it is further ordered, adjudged, and declared that Casa 74th is entitled to retain plaintiffs' deposit, in the amount of $840,000 and all accrued interest thereon, and Starr Associates LLP, as escrow agent, is directed to release said deposit from escrow to Casa 74th; and it is further ordered that the issue of reasonable attorney's fees is hereby referred to a special referee to hear and determine.