EUGENE D. SCHAFFERT ET AL., APPELLANTS, V. G. W. HARTMAN ET AL., APPELLEES.

278 N. W. 2d 343

Filed May 1, 1979. No. 42163.

Crosby, Guenzel, Davis, Kessner & Kuester, for appellants.

Hanson & Hanson, for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and CANIGLIA, District Judge.

CLINTON, J.

This appeal arises from an action to quiet title to an undivided one-half interest in the oil, gas, and other minerals (hereafter for convenience referred to as minerals) in a tract of land, hereinafter identified as tract (A), in Hitchcock County, Nebraska, in the plaintiffs Schaffert. Schafferts and the defendants Hartman both filed motions for summary judgment on the ground there was no disputed issue of material fact and each was entitled to judgment as a matter of law. The court denied the motion of the Schafferts, granted the motion of the Hartmans, and quieted title in them to the disputed one-half interest. Schafferts then appealed to this court. We affirm.

The issue in the trial court and here is the construction and effect of a provision in a warranty deed by which Hartmans, on February 1, 1960, conveyed to Schafferts one contiguous tract of land in Hitchcock County, designated by legal description, which consisted of tract (A) above referred to and additional land which we shall refer to as tract (B). In the deed, following the legal description of the property, was the following: ". . . excepting and reserving a half interest in the oil, gas and minerals, the intention being that the interest excepted and reserved by the grantors shall be subject to and reduced by outstanding mineral interests, and that this

instrument shall accordingly convey to the grantees a full and unencumbered half interest in the oil, gas and minerals, along with all other rights in said property." The issue was submitted to the trial court upon the pleadings which incorporated a real estate contract and certain deeds of conveyance, admissions, answers to interrogatories, and affidavits. Neither party contends there is any question except one of law.

The record establishes the following undisputed facts. On June 17, 1950, Hartmans' predecessor in title conveyed to a third party an "undivided one-half interest in and to all of the oil, gas and other minerals in and under, and that may be produced" from tract (A). The instrument of conveyance recited that tract (A) was then "under an oil and gas lease." The habendum clause in the above conveyance was as follows: "TO HAVE AND TO HOLD the above described property, together with all and singular the rights, appurtenances thereto in anywise belonging unto the said Grantee, herein, his heirs and assigns for a period of the next 20 years from June 17, 1950 and as long thereafter as oil and/or gas is produced from these premises or the property is being developed or operated . . . ."

On December 28, 1959, the Hartmans, then the owners of tracts (A) and (B), contracted to sell the land to the Schafferts. The contract contained the following provision immediately following the legal description of the property: ". . . together with an undivided half interest in the oil, gas, mineral and royalty rights therein, the grantors hereby reserving to themselves an undivided half of the same, subject to previous reservations in the chain of title, the intention being that the grantees shall have a full half interest in the said oil, gas, minerals and royalty rights."

On February 1, 1960, in consummation of the contract, the Hartmans conveyed to Schafferts the land

(tracts (A) and (B)) by the deed which contained the provision quoted in the second paragraph of this opinion.

When the 20-year term mentioned in the mineral conveyance of June 17, 1950, expired, there had been no production of oil or gas from tract (A). At a later time, in 1975, oil and gas leases covering both tracts (A) and (B) were executed and delivered.

Schafferts contend that by virtue of the deed from the Hartmans they became the owners not only of an undivided one-half interest in the minerals in tracts (A) and (B), but also owners of the reversionary interest in the minerals in tract (A) which followed the expiration on June 17, 1970, of the term interest granted by the mineral conveyance of June 17, 1950.

Schafferts' argument is founded in part upon the fact that the terms "exception" and "reservation" are, in the law of conveyancing, terms of art which have different meanings. They correctly point out by quotations from opinions of this court that an exception is "a withdrawal from the operation of the grant, of some part of the thing granted; thus, where real estate is granted, a portion thereof may be excepted from the terms of the conveyance. * * * If the exception be valid, the title to the thing excepted remains in the grantor, the same as if no grant had been made. * * * An exception in a deed is nothing more than a qualification, by which some part of the estate is not conveyed, which would have passed to the grantee but for the exception. * * *," Kozak v. State, 189 Neb. 525, 203 N. W. 2d 516, and that a reservation is "some new thing issuing out of what is granted . . . a reservation, while not affecting the title to the thing granted, may reserve to the grantor a right to the use or enjoyment of a portion thereof, as an easement, the right to pass over, or the like." Eiseley v. Spooner, 23 Neb. 470, 36 N. W. 659.

They argue, therefore, that the term exception and the term reservation as used in the conveyance

apply to two different things. The reservation purportedly refers to the minerals conveyance for the 20-year term in tract (A) and the purpose of the reservation is to limit the warranty as to and give notice of the outstanding interest. The intention is that, when the term expired, the reversionary interest passed to the Schafferts. The exception, it is asserted, applied only to a half interest in the minerals in tract (B). Thus, by the deed, the Schafferts received a present one-half interest in the minerals in tract (A), together with the reversionary interest in the other half of the minerals in tract (A), and so became the owners of all the oil, gas, and other minerals in that tract.

It is to be noted that Schafferts' argument is inconsistent in that when they say the reservation applies to the 20-year term, they pervert the definition of the word reservation, for under the definition upon which they rely, the proper term to apply to the exclusion of the undivided mineral interest owned by the third party would be exception and not reservation, for no new thing was being created. Furthermore, the language, "excepting and reserving," clearly pertains to the entire tract and does not, as they contend, embrace an exception as to tract (B) and a reservation as to tract (A) for the tracts are not separately referred to.

Schafferts further argue the Hartmans could not make an exception of minerals because "at the time of the conveyance of the property, the Hartmans did not have a one-half interest in the minerals in Tract A. Therefore, they could not except that which they did not have." This is contrary to fact. As to tract (A), the Hartmans owned the fee in one-half of the minerals and the reversionary interest in the other half. The argument is indeed a strange one for, if the Hartmans had no interest, how did the Schafferts acquire any interest from the Hartmans? A grantor makes an exception for one or both of two reasons,

either he excepts because he does not own or because he wants to retain. In the present instance the exception did both — it excluded the present one-half mineral interest owned by other parties and retained the future or reversionary interest in that same one-half.

The Schaffert argument twists beyond recognition the rather plain and clear language of the deed. It is based entirely upon the unnecessary insertion into and the imprecise use of the term "reserving" in the language describing the intended effect of the deed upon the mineral ownership.

The first phrase of the exception is this: "excepting and reserving a half interest in the oil, gas and minerals." This phrase, despite the unnecessary use of the term reserving, is perfectly clear. It means that the grantors retain one-half of the mineral interest in the land described in the deed. That land consisted of tracts (A) and (B). Since, however, there existed the outstanding term interest in the minerals, it was necessary to state whose half interest in the minerals was subject to the outstanding term interest. The next phrase of the deed answers that question. The excepted one-half was "subject to and reduced by outstanding mineral interests." Thus, the grantors' (Hartmans) interest was "subject to" the term interest. This is the same as saying they retained the reversionary interest, which existed only in tract (A). The draftsman could have stopped there, for by the plain language Schafferts became the owners of a present interest in the minerals in all of the land, and Hartmans retained their present interest in one-half of the minerals in tract (B) and retained the future or reversionary interest to one-half of the minerals in tract (A). However, the draftsman wanted to make clear beyond all doubt what was being accomplished so he redundantly described the interest in the minerals the Schafferts were to receive by saying: ". . . and that

this instrument shall *accordingly* [recognizing the redundance] convey to the grantees a *full and unencumbered* [i.e., the grantors' interest, not the grantees', has the burden of the term interest] half interest in the oil, gas and minerals, . . ." (Emphasis supplied.)

The language of the exception may not use the words of art precisely, but it is plain and unambiguous and written in language obviously designed to make clear to a layman who was aware of the existence of the term interest exactly what the effect would be. It is a notorious fact that a great many lawyers and courts use the terms exception and reservation interchangeably as well as redundantly in the manner of laymen who do not know that they are terms of art. See cases cited at 15A Words & Phrases, p. 100, under the heading, Exception — In Deed, Reservation synonymous. No harm is done (at least no example of harm readily comes to mind) by misuse of the terms because the description of what is reserved or excepted, or reserved and excepted, makes clear what is being accomplished.

Where a deed is plain and unambiguous, its meaning is to be determined without reference to extrinsic facts. Badura v. Lyons, 147 Neb. 442, 23 N. W. 2d 678. In determining the intent of the parties to a deed, the language of the instrument, together with the surrounding circumstances, are to be considered. Hart v. Saunders, 74 Neb. 818, 105 N. W. 709. In this case the language of the deeds and the surrounding circumstances, i.e., the state of title to the minerals, leave nothing ambiguous. There is no claim that there was a mistake of fact or fraud which impaired the validity of the deed.

AFFIRMED.