SCUTTI ENTERPRISES, INC., Appellant, v WACKERMAN GUCHONE
CUSTOM BUILDERS, INC., Respondent.

Fourth Department, December 20, 1989

### APPEARANCES OF COUNSEL

*Harris Beach & Wilcox (James Hartman* of counsel), for appellant.

*Williams & Williams (Mitchell Williams* of counsel), for respondent.

### OPINION OF THE COURT

DENMAN, J.

This is an action to compel specific performance of an option to purchase land. The option was reserved in a deed conveying the optioned premises and additional property from plaintiff to defendant. Plaintiff appeals from an order which denied plaintiff's motion for summary judgment and granted defen-

dant's cross motion for summary judgment dismissing the complaint. Although there is no written decision, apparently the court granted summary judgment to defendant on the ground that the option violates the Statute of Frauds (General Obligations Law § 5-703) because the deed in which it is reserved was not signed by defendant, the party to be charged; and/or that the option violates the rule against perpetuities (EPTL 9-1.1 [b]) because the time for its exercise is indefinite. We reverse and grant summary judgment to plaintiff. The claim is not barred by the Statute of Frauds and the option does not violate the rule against perpetuities.

In August 1985, plaintiff's principal, Fedele (Dale) Scutti, entered into an agreement to sell defendant, a land developer, a 12-acre undeveloped parcel in the Town of Pittsford for $325,000. The contract of sale provided that the seller, Dale Scutti, individually, "shall have an option to purchase lot 5 fully improved as finally approved by the Town of Pittsford for the sum of $45,000 (Forty-five thousand). This option shall expire six months from closing." Defendant admits that the contract of sale was signed by William H. Wackerman in his capacity as defendant's president.

The 12-acre parcel was conveyed by deed dated December 16, 1985 and recorded December 18, 1985. Apparently as a result of Dale Scutti's assignment of his contract rights to plaintiff, the deed granted the corporate plaintiff rather than Dale Scutti the option to purchase lot 5 for $45,000. Although the terms of the option reserved to plaintiff in the deed were substantially the same as the terms of the option granted to Dale Scutti in the contract of sale, prior to closing the parties modified the provision concerning the time and manner in which plaintiff was to exercise its option. Whereas the contract of sale obligated Scutti to exercise his option within six months of closing, the parties apparently recognized that it was unrealistic for defendant to improve the property and obtain subdivision approval within that time period. Thus, in the deed, the parties agreed that plaintiff's option would expire on the later of two specified contingencies: one year from the recording of the deed, or 60 days from defendant's mailing to plaintiff of notice of final subdivision approval. With respect to the latter contingency, the deed provided: "The Grantee shall diligently proceed to cause the proposed subdivision map to be filed and shall, within fifteen (15) days thereafter, notify the Grantor of the date of filing of the final approved map (Subdivision Map) and shall provide Grantor

with the Liber and Page of such filing in the Monroe County Clerk's Office. * * * Notice shall be deemed to be complete within three (3) days of time of mailing." The deed further provided that defendant then had 15 days to furnish plaintiff with tax, bankruptcy, and title searches and that closing would take place within 15 days thereafter. The deed was signed by Dale Scutti as representative of plaintiff, the grantor, but was not signed by defendant.

Defendant obtained final subdivision approval on October 1, 1986. On October 8, 1986, defendant advised plaintiff of the filing of the approved subdivision map. On October 28, 1986, plaintiff timely exercised its option to purchase lot 6 (formerly designated as lot 5) and requested that defendant furnish it with updated searches. In February 1987, defendant's attorney furnished plaintiff with the title and tax searches and forwarded a copy of a proposed deed conveying the optioned premises. On February 18, 1987, plaintiff's attorney suggested several technical changes to the proposed deed. Thereafter, the parties agreed to postpone the closing and attempted to negotiate a buyout of plaintiff's option by defendant. By April 1, 1987, the parties' attorneys had exchanged letters wherein the parties reached apparent agreement that plaintiff would relinquish its option right for $105,000. That agreement was never made final, however, and defendant thereafter refused to convey the optioned premises.

In February 1988, plaintiff commenced this action seeking specific performance of the option agreement or $200,000 in damages. Defendant's original answer contained a general denial and raised as an affirmative defense that plaintiff failed to close the purchase of the optioned premises within the time prescribed by the deed, a contention later abandoned by defendant. Defendant's answer also set forth a counterclaim based on Dale Scutti's alleged postcontract, preclosing misrepresentation of the drainage conditions on the property.

In July 1988, plaintiff moved for summary judgment granting specific performance of the option agreement. Defendant opposed and cross-moved for summary judgment dismissing the complaint or, in the alternative, for leave to amend its answer to assert the Statute of Frauds. In support of the motion, defendant's president, William Wackerman, averred that the option contained in the contract of sale had expired by its own terms without Dale Scutti (or plaintiff, as his assignee) having timely exercised it; that the option contained in the deed was unenforceable because defendant had not

signed the deed or any memorandum as evidence of that option; and that the option was void because it violated the rule against perpetuities.

The court denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint.

## STATUTE OF FRAUDS

█ A land purchase option constitutes the creation or grant of an interest in real property, and thus falls within New York's Statute of Frauds, requiring a writing signed by the party to be charged (General Obligations Law § 5-703 [1], [3]; *see generally,* 61 NY Jur 2d, Frauds, Statute of, § 105). That is true where the option is one to repurchase and is reserved by the grantor in a deed conveying the optioned premises to the grantee *(see,* 61 NY Jur 2d, Frauds, Statute of, § 115, at 190). Although plaintiff's reservation of an option to repurchase a portion of the deeded premises falls within the Statute of Frauds, the statute is satisfied in this case by several writings. The written contract of sale signed by defendant suffices as the necessary memorandum of defendant's obligation to reconvey the optioned premises. We note that the principal terms of the option agreement, defendant's promise to reconvey a specified lot for $45,000, remained unchanged between the time the parties signed the contract and the time they closed the transaction. Additionally, the record contains a letter from defendant's attorney in which he attempted to negotiate a purchase of plaintiff's option right. That letter, which may be deemed to bind defendant, acknowledged defendant's obligation to reconvey the optioned premises.

█ Moreover, the doctrine of part performance takes this case outside the Statute of Frauds *(see,* General Obligations Law § 5-703 [4]). That doctrine is based on principles of equity, in particular, recognition that the purpose of the Statute of Frauds is to prevent frauds, not to enable a party to perpetrate a fraud by using the statute as a sword rather than a shield. The requisites for invoking the doctrine of part performance are established in this case. Plaintiff has shown that it fully performed its part of the bargain, having transferred title to 12 acres to defendant. Plaintiff's performance is "unequivocally referable" to defendant's corresponding promise, contained in the same instrument under which plaintiff performed, to reconvey a single lot after improvement had been

made and subdivision approval obtained. Moreover, plaintiff's performance was carried out with a view to defendant's performance. Finally, plaintiff has shown that fraud, injustice and hardship will result if defendant's promise to reconvey the optioned premises is not enforced *(Walter v Hoffman,* 267 NY 365, 369-370; *Imperator Realty Co. v Tull,* 228 NY 447, 453; *see, American Bartenders School v 105 Madison Co.,* 59 NY2d 716, 718).

## THE RULE AGAINST PERPETUITIES

■■ The option agreement does not violate the rule against perpetuities. New York's statutory rule against perpetuities provides in pertinent part: "No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation". (EPTL 9-1.1 [b].) The life of a corporation cannot serve as a measuring life under that rule; therefore, where the conveyance is between corporations and no measuring life is otherwise indicated by the instrument, the vesting period is 21 years *(Metropolitan Transp. Auth. v Bruken Realty Corp.,* 67 NY2d 156, 161). We have previously held that options, which by their very nature are contingent, are subject to the rule against perpetuities *(Buffalo Seminary v McCarthy,* 86 AD2d 435, 440-443, *affd on opn below* 58 NY2d 867). Thus, the option interest reserved by plaintiff in the deed is void at its inception unless, by its terms, it must vest or lapse within 21 years of its creation.

On its face, the option provision could be construed to violate the rule because it is theoretically possible that plaintiff could exercise the option more than 21 years after its creation in the event that defendant did not obtain subdivision approval or did not notify plaintiff of approval *(see generally, Buffalo Seminary v McCarthy, supra).* Nonetheless, the saving statute requires that we construe the option in such a way as to avoid invalidating it. EPTL 9-1.3 (a) provides, "Unless a contrary intention appears, the rules of construction in this section govern with respect to any matter affecting the rule against perpetuities." EPTL 9-1.3 (d) provides: "Where the duration or vesting of an estate is contingent upon the probate of a will, the appointment of a fiduciary, the location of a distributee, the payment of debts, the sale of assets, the settlement of an estate, the determination of questions relating to an estate or transfer tax or the occur-

rence of *any specified contingency,* it shall be presumed that the creator of such estate intended such contingency to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate." (Emphasis supplied.) By enacting EPTL 9-1.3 (d), the Legislature intended to prevent, wherever possible, inadvertent violations of the rule. Subdivision (d) in particular is designed to prevent the problem, present in this case, created by an instrument's reference to a specified event which ordinarily would take a short time to occur but which theoretically could take more than 21 years. We conclude that the contingency identified in the deed, obtaining subdivision approval, constitutes "any specified contingency" within the meaning of the statute. Even if, as defendant claims, the statute is limited to administrative contingencies *(see, Buffalo Seminary v McCarthy, supra,* at 447, n 10; *but see,* Rohan, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 9-1.3, 1989 Pocket Part, at 243), subdivision approval qualifies as such. First, in this context, subdivision approval is an event that would necessarily be expected to happen in the near future; second, it is not the very event upon the happening of which the interest vests, but is an incidental or collateral event similar to those listed in the statute (the vesting event is plaintiff's exercise of the option) *(see, Buffalo Seminary v McCarthy, supra).*

The language of the option provision and the circumstances of this case make clear that the saving statute applies and that the parties intended that the contingency would occur within 21 years. The deed obligated defendant to "diligently proceed to cause the proposed subdivision map to be filed" and to serve notice of such filing on plaintiff within 15 days thereafter. From that point, plaintiff had 60 days to exercise its option and closing was to take place within 30 days after that *(compare, Buffalo Seminary v McCarthy, supra).* Further, defendant purchased the property for the express purpose of developing it, thus requiring it to obtain subdivision approval. In fact, defendant obtained subdivision approval within 10 months of the conveyance, thus triggering plaintiff's time to exercise its option. Although the courts may not adopt a "wait and see" approach in determining the validity of a property interest under the rule against perpetuities, actual events in this case strongly demonstrate the parties' intent that the contingency would occur, and that plaintiff's option right would vest, soon after the conveyance.

Plaintiff is therefore entitled to summary judgment on its action for specific performance of the option agreement con-

tained in the deed from plaintiff to defendant dated December 16, 1985. In the event defendant is unable to convey good title in accordance with the agreement, Trial Term should conduct a hearing to ascertain and assess damages.

In granting summary judgment for plaintiff, we merely note that there is no merit to defendant's counterclaim for fraud based on alleged postcontract misrepresentations by plaintiff. Defendant's own allegations conclusively refute the elements of inducement and detrimental reliance essential to its fraud claim.

Accordingly, the order should be reversed on the law, with costs, defendant's motion for summary judgment should be denied, and summary judgment should be entered for plaintiff.

DILLON, P. J., CALLAHAN, LAWTON and DAVIS, JJ., concur.

Order unanimously reversed, on the law, with costs, defendant's motion for summary judgment denied, and summary judgment granted to plaintiff.