Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/23/2018 08:14 AM CDT

John D. Walters, appellant, v. Melanie Griffith Sporer
and Jay A. Sporer, Trustees of the Revocable Inter
Vivos Trust of Melanie Griffith dated December 5,
2000, and Douglas M. Lau and Debra L. Lau,
husband and wife, appellees.

___ N.W.2d ___

Filed December 29, 2017.    No. S-16-623.

1. **Specific Performance: Equity: Appeal and Error.** An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court.

2. **Deeds.** The construction of language in a deed is a question of law.

3. **Statutes.** Statutory interpretation presents a question of law.

4. **Appeal and Error.** On a question of law, an appellate court reaches a conclusion independently of the court below.

5. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

6. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

7. **Property: Options to Buy or Sell: Words and Phrases.** Generally, a right of first refusal, or a preemptive right, is a right to elect to take specified property at the same price and on the same terms and conditions as those contained in a good faith offer by a third person if the owner manifests a willingness to accept the offer; essentially a dormant option, a right of first refusal is merely contingent until the condition

precedent is met, at which point the preemptive right ripens into a full option.

8. **Property: Options to Buy or Sell.** While a right of first refusal has no binding effect before it has ripened, upon doing so, it legally constrains an owner's right to sell his property by compelling him to offer it first to the party who holds the right of first refusal.

9. **Options to Buy or Sell: Specific Performance: Proof.** A right of first refusal may be enforced by specific performance where it can be proved that the condition triggering the right has occurred and the option holder was ready, able, and willing to buy during the period.

10. **Property: Options to Buy or Sell.** A right of first refusal is a nonvested property interest.

11. **Property: Conveyances: Words and Phrases.** The purpose of a reservation is to reserve to the grantor something new out of that which is conveyed and which did not exist before as an independent right.

12. ____: ____: ____. A reservation is always something taken back out of that which is demised; accordingly, a reservation is a regranting of an interest in the property from the grantee to the grantor.

13. ____: ____: ____. Whether a provision is a reservation or an exception does not depend upon the use of a particular word, but upon the character and effect of the provision itself.

14. **Deeds.** The grantor of a deed may reserve any nonpossessory interest in the land that he could not have held separate from his ownership interest.

15. **Property: Conveyances: Fraud.** A reservation is subject to the statute of frauds.

16. **Deeds: Parties.** The general rule is that the grantee of a deed accepted by him is a party to the deed, even though he does not sign it, and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor.

17. **Fraud: Equity.** The statute of frauds is based on principles of equity, in particular, recognition that the purpose of the statute of frauds is to prevent frauds, not to enable a party to perpetrate a fraud by using the statute as a sword rather than a shield.

18. **Deeds.** The acceptance of a deed operates to satisfy the requirement, under Neb. Rev. Stat. § 36-103 (Reissue 2016), that a contract creating an interest in land be signed by the party to be charged therewith.

19. **Deeds: Fraud.** In the absence of fraud, one who fails to read a deed cannot avoid the effect of accepting it.

20. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

21. ____. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Hitchcock County: David Urbom, Judge. Reversed and remanded for further proceedings.

George G. Vinton for appellant.

John D. Stalnaker, of Stalnaker, Becker & Buresh, P.C., for appellees Melanie Griffith Sporer and Jay A. Sporer.

Randy C. Fair, of Dudden & Fair, P.C., L.L.O., for appellees Douglas M. Lau and Debra L. Lau.

Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Funke, J.

This is an action by appellant John D. Walters (John) to enforce a right of first refusal set forth in a 1998 warranty deed, by which he and his then-spouse (the Walterses) conveyed real property to appellees Douglas M. Lau and Debra L. Lau. The Laus later sold the property to appellees Jay A. Sporer and Melanie Griffith Sporer by a warranty deed, in 2013, without giving John notice of the Sporers' offer.

The court granted summary judgment for the Laus and the Sporers against John because it ruled that the language in the deed did not satisfy the statute of frauds, Neb. Rev. Stat. § 36-105 (Reissue 2016), and there was no other written agreement signed by the Laus. We hold that a right of first refusal in a deed is an enforceable agreement under the statute of frauds upon the acceptance of the deed. Therefore, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.

## I. BACKGROUND

In 1998, the Laus began looking for a wooded acreage to establish a home. Eventually, the Laus entered into negotiations with John to purchase approximately 8 acres of land and for the Walterses to finance the purchase. Subsequently, John and the Laus met with an attorney, chosen by John, to draft the sale documents.

John testified that the attorney represented both him and the Laus because he never spoke with the attorney alone, only with the Laus. The Laus stated that they agreed to use John's attorney because Debra Lau knew him but that the attorney did not represent them. The attorney testified that John had been a client of his prior to the transaction, and he stated that he had no documents indicating that the Laus were his clients or that he jointly represented those parties.

John stated that he and the Laus met with the attorney three times: The first time, the attorney gave them general instructions; the second time, they discussed the terms; and the third time was the closing.

In addition, John stated that he and the Laus had discussed and orally agreed to the right of first refusal before meeting with the attorney and that it was brought up at the second meeting with the attorney. John testified that he remembered asking at the meeting if they needed the right of first refusal in a separate document but that the attorney said it could just be included in the deed.

John stated that he wanted the right of first refusal for several reasons, including the following: He was not trying to sell the property at that time, but was willing to sell it to the Laus because they were friends; he could have extended a pivot on his abutting property to the east to irrigate a portion of the land; he had an oil well abutting the property; and there was a road on the land that he used to access his adjacent land. He testified that he would not have sold the property without the right of first refusal.

Debra Lau also believed the parties met three times. She stated she recalled that during the first two meetings, the discussion included the price per acre, the interest rate for the deed of trust, how payments would be made, an option for the Laus to purchase an additional 5.7 acres, and the paperwork needed for the sale. She admitted that it would be difficult to remember everything from the meetings, however. She stated that during closing, she read only the documents that she signed.

Douglas Lau remembered the Laus' having met with the attorney only once before closing. He stated that they told the attorney everything they wanted at the first meeting. He said that the Laus had few requests and accepted John's first offer for price because they needed the land and were not in a position to barter. He testified that he did not remember discussing a right of first refusal with John. However, he testified that he would have had no objection to granting John a right of first refusal.

The Laus both testified that they believed paragraph 11 of the deed of trust was a right of first refusal and that it was the exclusive statement on the issue. Paragraph 11 of the deed of trust effectively contains a "due on sale" clause: "Should Trustors desire to sell or encumber the subject premises or any part thereof, they shall forthwith obtain the consent of Beneficiary to such sale or encumbrance while any sums remain due on the Note secured by this Trust Deed." If the Laus violated this provision, the Walterses had the right to demand immediate payment of the balance owed and pursue any remedies provided under the deed.

The Laus both stated that they believed their right of first refusal obligation ended once the deed of trust was paid. Debra Lau also stated that this was discussed at the second meeting with the attorney and that she remembered saying that as long as they owed John money on the property, it was not an unreasonable request.

The attorney stated that he did meet with the parties and had discussions with them but that he had no recollection of the specific contents of any conversations he had with the Laus, including whether or not he discussed the right of first refusal with them. He believed that he purposefully included the right of first refusal in the deed, because it was the only time he could recall including such a right in a deed. The attorney also testified that it would have been routine for him to discuss all of the documents in a real estate transaction with the parties, as well as any nonstandard provisions. He believed the absence of a separate document for the right

of first refusal was probably a result of the parties' desire to save expenses.

On September 15, 1998, the Walterses conveyed the 8-acre tract of land to the Laus by a joint tenancy warranty deed. At closing, the parties also executed a promissory note and trust deed for the Walterses to finance the Laus purchase of the property; a grant of a right of use, providing the Laus an easement over other property owned by the Walterses for ingress and egress; an option contract for a 5.7-acre section of land, which was surrounded on three sides by the 8-acre section the Laus had purchased; and other documents related to the transaction. John testified that the Laus also granted him an oral easement to use their driveway to access his adjacent land to the east.

The warranty deed included a reservation of mineral rights, as well as, the right of first refusal. In regard to the right of first refusal, the deed contained the following provision: "No sale of the above-described premises shall be consummated without giving at least 30 days written notice of the terms to Grantor. Grantor shall have the right to buy the lot on the same terms."

The day after closing, Debra Lau, at the attorney's direction, went to the courthouse to sign the "Form 521" "Real Estate Transfer Statement." A Form 521 transfer statement sets forth information regarding the parties to the transaction, the type of property transferred, and the consideration paid.[1] Nebraska law requires that a deed will not be recorded unless the transfer statement is signed by the grantee and filed with the deed.[2]

Debra Lau testified that she was not sure if the attorney told her why she needed to sign the transfer statement but that he might have said it was to get the deed recorded. She also testified that she did not recall discussing the form at closing.

---

[1] See Neb. Rev. Stat. § 76-214(1) (Reissue 1996).

[2] *Id.*

The attorney sent the Laus and the Walterses letters, dated 3 days after the closing, in which he enclosed all of the documents involved in the transaction—including copies of the joint tenancy warranty deed. He could not recall ever hearing from the Laus again after sending the letters.

Douglas Lau stated that he read the deed when he received it in the mail a couple of weeks after closing. He stated that he believed the right of first refusal in the warranty deed was between the Walterses and had nothing to do with the Laus. He explained that he believed it was an attempt by John to protect himself in future divorce proceedings. He testified that this was his own belief and not based on any representations made by John.

Debra Lau testified that she remembered receiving the documents in the mail after closing but did not feel the need to read any of them because she had just signed them. She stated that she did not read the deed until she received notice of this litigation.

In 2003, the Laus exercised their option to purchase the 5.7-acre tract, which John conveyed to them by a joint tenancy warranty deed. In 2007, the Laus finished paying John on the promissory note, and, upon their request, the Walterses executed a deed of reconveyance to them.

Around 2013, the Laus decided to sell the approximately 13-acre tract of land with their trailer home. In order to do so, Debra Lau contacted a real estate agent and showed him the Laus' transaction documents for the property, including the warranty deed.

When the Laus listed their property, they did not inform the Walterses, but their agent told them that he would mention the listing to John. John testified that the agent told him that the Laus had listed the property and their trailer home for $75,000. John told the agent that he was interested in the land, but not the trailer home. Later, the agent told John that the Laus might be interested in selling just the property. On both occasions, John told the agent to keep him informed but

did not mention his right of first refusal. John said he did not call the Laus about the property listing because they were not speaking.

The Sporers owned an adjacent acreage west of the Laus' property, and Douglas Lau called Jay Sporer to see if he was interested in purchasing the Laus' property. Douglas Lau did not mention the Walterses' right of first refusal. The Laus entered a purchase agreement with Jay Sporer but neither the purchase agreement nor the Laus' affidavit regarding debts, liens, and adverse claims to the property mentioned the Walterses' right of first refusal. In 2013, the Laus conveyed the property to the Sporers, as trustees of Melanie Griffith's revocable inter vivos trust, by warranty deed, which was recorded that year.

In 2014, John's then-spouse assigned her entire interest in the right of first refusal to John, which he recorded.

John filed suit in February 2014, alleging that he had reserved a right of first refusal in the warranty deed. He claimed that each acre of land conveyed from the Laus to the Sporers is of equal value; accordingly, because the total price of the approximately 13 acres was about $27,000, he valued the 8 acres of land from the 1998 transaction at $16,615.36. He prayed for an order that (1) required the Sporers to convey the property to him after he paid them that amount and (2) quieted title to the property in him.

In their amended answer, the Sporers denied that (1) the warranty deed reflected the Laus' agreement with John, (2) the Laus had agreed to grant the Walterses an indefinite and unlimited right of first refusal, (3) John had any right of first refusal, (4) the Laus were required to give John notice of the 2013 sale to the Sporers, and (5) the 8 acres all had equal value. They alleged that the right of first refusal, to the extent it existed, had expired under the terms of the trust deed. Alternatively, they alleged that there was no meeting of the minds between the Laus and the Walterses regarding the alleged right or that a mistake had been made in drafting the

warranty deed to include this right when the parties had not agreed to it.

For an affirmative defense, the Sporers alleged that John's "[c]omplaint should be barred, in full or in part, due to its failure to comply with Neb. Rev. Stat. §76-301, *et seq.*, providing for the reimbursement of an occupant for improvements made and taxes paid." Finally, they alleged that John's complaint was barred, in whole or in part, by the doctrines of unclean hands, unjust enrichment, estoppel, waiver, or laches.

In April 2015, the Sporers filed a cross-claim against the Laus. They sought an order that the Laus had breached the 2013 warranty deed that conveyed the property to the Sporers and asked for damages, attorney fees, and costs.

In May 2015, the Laus filed an amended answer and counterclaim against John. Their amended answer is nearly identical to the Sporers' amended answer, including the Sporers' allegation regarding Neb. Rev. Stat. § 76-301 (Reissue 2009). In their counterclaim, the Laus alleged that John had commenced his action to harass them, because the parties had an ongoing boundary dispute, and that he had tortuously interfered in their business relationship with the Sporers. They requested damages, attorney fees, and costs.

In October 2015, John moved for summary judgment. The Laus filed a cross-motion for summary judgment against John and moved for summary judgment on the Sporers' cross-claim against them. The Sporers filed a cross motion for summary judgment against John and opposed the Laus' motion for summary judgment on their cross-claim.

At the hearing on these motions, the parties agreed to submit simultaneous briefs and rebuttal briefs by specified dates. At the end of the hearing, the Sporers argued that a right of first refusal is different from reserving mineral rights in a deed because the grantor has an existing right to the minerals. They argued that a right of first refusal is a property right that the buyers must grant to the seller. For that reason, they argued

that the statute of frauds requires an agreement in writing to be enforceable.

The court found that the right of first refusal in the warranty deed was not a reservation of a right because it did not reserve to John the right to use or enjoy any portion of the property. Further, it held that the contract in the deed was void, under § 36-105, because it was not signed by the Laus. Accordingly, the court found that because there was no contract, there could be no breach. The court ruled that the Laus and the Sporers were entitled to judgment as a matter of law against John and granted their motions for summary judgment. The court denied John's motion for summary judgment.

John then appealed. The Nebraska Court of Appeals dismissed the appeal because the district court had not resolved the Laus' counterclaim against John or the Sporers' cross-claim against the Laus. On remand, John moved the court for a final order. The court concluded that the Laus' counterclaim against John should be dismissed and that the Sporers' cross-claim against the Laus was moot because of its summary judgment. John perfected a timely appeal. We removed the case to our docket on our own motion pursuant to our authority to regulate the caseloads of the Court of Appeals and this court.[3]

## II. ASSIGNMENTS OF ERROR

John assigns, restated and reordered, that the court erred in (1) concluding that the right of first refusal was void under § 36-105; (2) failing to conclude that a right of first refusal is a contract that is not subject to real property statutes of frauds; (3) holding that the right of first refusal was not a reservation; (4) considering the statute of frauds defense, because it was not pled as an affirmative defense; (5) granting the Laus and the Sporers summary judgment; and (6) denying John's motion for summary judgment.

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## III. STANDARD OF REVIEW

[1] An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court.[4]

[2-4] The construction of language in a deed is a question of law.[5] Statutory interpretation presents a question of law.[6] On a question of law, an appellate court reaches a conclusion independently of the court below.[7]

[5,6] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[9]

## IV. ANALYSIS

### 1. Right of First Refusal Between John and Laus Is Enforceable

#### (a) Rights of First Refusal

[7,8] Generally, a right of first refusal, or a preemptive right, "is a right to elect to take specified property at the same

---

[4] *O'Connor v. Kearny Junction*, 295 Neb. 981, 893 N.W.2d 684 (2017).

[5] See *Schram Enters. v. L & H Properties*, 254 Neb. 717, 578 N.W.2d 865 (1998).

[6] *In re Estate of Fuchs*, 297 Neb. 667, 900 N.W.2d 896 (2017).

[7] *In re Interest of Becka P. et al., ante* p. 98, 902 N.W.2d 697 (2017).

[8] *Hike v. State*, 297 Neb. 212, 899 N.W.2d 614 (2017).

[9] *Id.*

price and on the same terms and conditions as those contained in a good faith offer by a third person if the owner manifests a willingness to accept the offer."[10] Essentially a dormant option, a right of first refusal is merely contingent until the condition precedent is met, at which point the preemptive right ripens into a full option.[11] However, a right of first refusal may never ripen into an option if the grantor disposes of the property in a way that does not trigger the condition precedent.[12] While a right of first refusal has no binding effect before it has ripened, upon doing so, it legally constrains an owner's right to sell his property by compelling him to offer it first to the party who holds the right of first refusal.[13]

An option to purchase real estate, on the other hand, is a unilateral contract by which the owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the option.[14] By such an agreement, the owner does not sell the land; nor does the owner at the time contract to sell.[15] The owner does, however, agree that the person to whom the option is given shall have the right, at his election or option, to demand the conveyance in the manner specified.[16] Options, however, may also be subject to a condition precedent which suspends the

---

[10] 92 C.J.S. *Vendor and Purchaser* § 180 at 156-57 (2010), citing *Old Port Cove Holdings v. Condo. Ass'n*, 986 So. 2d 1279 (Fla. 2008). See, also, Jonathan F. Mitchell, Note, *Can a Right of First Refusal Be Assigned?*, 68 U. Chi. L. Rev. 985 (2001).

[11] See 92 C.J.S., *supra* note 10. See, also, *Jones v. Stahr*, 16 Neb. App. 596, 746 N.W.2d 394 (2008).

[12] See, e.g., *Park Station v. Bosse*, 378 Md. 122, 835 A.2d 646 (2003).

[13] See *Winberg v. Cimfel*, 248 Neb. 71, 532 N.W.2d 35 (1995). See, also, *Peters v. Smolian*, 49 Misc. 3d 408, 12 N.Y.S.3d 824 (2015); *Manufactured Housing Cmtys. v. State*, 142 Wash. 2d 347, 13 P.3d 183 (2000).

[14] *Winberg, supra* note 13.

[15] *Id.*

[16] *Id.*

holder's right to elect to demand conveyance until the condition has been satisfied.[17]

Options and rights of first refusal are sometimes confused but there is a clear and classic distinction: The option compels performance within the time limit specified or, if none is mentioned, then within a reasonable time, whereas the right of first refusal has no binding effect unless the offeror decides to sell.[18] Nevertheless, in differentiating between rights of first refusal and options, the word "first" has special significance: "'"[T]he limiting word 'First' indicates that there is no intention to create a power of acceptance in the promisee; instead it indicates that the promisee shall be the first party to be given such a power."'"[19]

[9] A right of first refusal may be enforced by specific performance where it can be proved that the condition triggering the right has occurred and the option holder was ready, able, and willing to buy during the period.[20]

### (b) Right of First Refusal Is
### Nonvested Property Interest

All of the parties argue that a right of first refusal is a contract right and not an interest in real estate. John directs us to case law from Nebraska[21] and foreign jurisdictions[22] to support

---

[17] See *Bauermeister v. Waste Mgmt. Co.*, 280 Neb. 1, 783 N.W.2d 594 (2010). See, also, Restatement (First) of Property § 393, comment *f.* (1944).

[18] *Winberg, supra* note 13.

[19] *Id.* at 77, 532 N.W.2d at 39, quoting *Landa v. Century 21 Simmons & Co.*, 237 Va. 374, 377 S.E.2d 416 (1989).

[20] See, *Jones, supra* note 11; *Hongsermeier v. Devall*, 16 Neb. App. 379, 744 N.W.2d 481 (2008).

[21] *Bauermeister, supra* note 17; *Schupack v. McDonald's System, Inc.*, 200 Neb. 485, 264 N.W.2d 827 (1978); *Jones, supra* note 11.

[22] *Peters, supra* note 13; *Old Nat'l Bank v. Arneson*, 54 Wash. App. 717, 776 P.2d 145 (1989).

his contentions that a right of first refusal creates no interest in property.

Contrary to John's assertion, neither *Schupack v. McDonald's System, Inc.*,[23] nor *Jones v. Stahr*[24] supports a finding that a right of first refusal does not create an interest in land.

In *Schupack*, we held that a right of first refusal to acquire future restaurant franchises in the Omaha, Nebraska-Council Bluffs, Iowa, area—granted to the right holder by the restaurant corporation—was intended to be personal in nature and could not be transferred or assigned without the corporation's consent, which it had not provided. Whether the right of first refusal gave the right holder an interest in any future franchises that would have allowed him to seek a remedy of specific performance was not at issue in the case, and we made no statements on the subject.[25] Instead, our decision was limited to whether the right of first refusal concerning franchise rights, not real property, was assignable.[26]

In *Jones*, the Nebraska Court of Appeals considered whether an offer to purchase property, as required by a right of first refusal, had been accepted.[27] Therese Dorenbach had granted Daniel F. Stahr and Georgia A. Stahr a subordinate right of first refusal to purchase her property in a sales agreement for adjoining property. In accordance with the agreement, Dorenbach offered the Stahrs the opportunity to purchase her land on the terms and conditions of a purchase agreement she had entered with Wesley J. Jones. The Stahrs accepted the offer but reserved the right to assign the sale contract before closing. Dorenbach rejected the Stahrs' acceptance because

---

[23] *Schupack, supra* note 21.

[24] *Jones, supra* note 11.

[25] See *Schupack, supra* note 21.

[26] *Id.*

[27] *Jones, supra* note 11.

she considered the reservation of the right to assign the contract to be a material deviation from the offer, constituting a counteroffer. After the parties initiated litigation, the trial court ruled in favor of Dorenbach, reasoning that the Stahrs' acceptance was a material deviation from the offer because the right of first refusal was personal.

The Court of Appeals reversed the judgment and remanded the cause for entry of specific performance in favor of the Stahrs. It reasoned that the right of first refusal ripened into an option contract when Dorenbach accepted Jones' offer. Because the Court of Appeals determined that option contracts are assignable, it held that the Stahrs' acceptance was not a material deviation from the offer.

John relies on a portion of dicta in *Jones*[28] in which the Court of Appeals acknowledged that many courts presume rights of first refusal to be personal in nature. The appellate court stated that courts have justified such a presumption on two bases: either to avoid a conflict with the rule against perpetuities or because "*the holder of a right of first refusal holds only a general contract right to acquire a later interest in real estate should the property owner decide to sell.*"[29]

These statements in *Jones* are neither those relied on by the Court of Appeals in *Jones* nor binding on our decision in the present matter.

In *Bauermeister v. Waste Mgmt. Co.*,[30] the sole issue presented was whether the common-law rule against perpetuities applied to an option subject to a condition precedent. There, family members contracted to sell land to a waste management company to be used as a landfill.[31] Under the contract, the company was to pay the sellers a monthly rent and

---

[28] *Id.*

[29] *Id.* at 602, 746 N.W.2d at 399 (emphasis supplied).

[30] *Bauermeister, supra* note 17.

[31] *Id.*

royalty.[32] The contract also provided that upon the termination of the purchase agreement, the sellers had the option to repurchase the land.[33]

We held that the common-law rule against perpetuities should no longer apply to certain commercial transactions, as a matter of policy.[34] In doing so, we explicitly classified the option contract at issue as a nonvested property interest.[35] This classification was relevant because Nebraska's Uniform Statutory Rule Against Perpetuities Act[36] specifically excluded "'[a] nonvested property interest . . . arising out of a nondonative transfer'" from the rule against perpetuities.[37] We reasoned, in part, that because the option would not have been subject to the rule against perpetuities if it was made after the enactment of the Uniform Statutory Rule Against Perpetuities Act, it should also be excluded from the common-law rule.[38]

Similarly, the Court of Appeals has treated a right of first refusal as a nonvested property interest for applying the Uniform Statutory Rule Against Perpetuities Act.[39]

[10] As discussed above, there is little distinction between a right of first refusal and an option subject to a condition precedent. Accordingly, we hold that a right of first refusal is also a nonvested property interest. In doing so, we follow

---

[32] *Bauermeister Deaver Ecol. v. Waste Mgmt. Co.*, 290 Neb. 899, 863 N.W.2d 131 (2015).

[33] *Bauermeister, supra* note 17.

[34] *Id.*

[35] *Id.*

[36] Neb. Rev. Stat. §§ 76-2001 through 76-2008 (Reissue 2003).

[37] *Bauermeister, supra* note 17, 280 Neb. at 7, 783 N.W.2d at 598. See § 76-2005(1).

[38] *Bauermeister, supra* note 17.

[39] *Greenhall Investments v. Wiese Dev. Corp.*, 14 Neb. App. 155, 706 N.W.2d 552 (2005).

the majority of courts in the country.[40] While John has cited precedent from foreign jurisdictions holding otherwise, we do not find their reasoning persuasive or binding.

### (c) Right of First Refusal
### Was Reserved in Deed

John argues that reserving a right of first refusal in a deed does not bring the right within the statute of frauds because it is an interest that is not transferred. The Laus and the Sporers argue that a right of first refusal is not an "exception" because it is not a right that a grantor possesses at the time of a conveyance and that it is not a "reservation" because, as the court ruled, it does not create an easement. Additionally, the Laus and the Sporers argue that a right of first refusal is something that the grantee would have to regrant to the grantor, which would bring the creation of a right of first refusal under the real property statute of frauds.

[11,12] The purpose of a reservation is to reserve to the grantor something new out of that which is conveyed and which did not exist before as an independent right.[41] A reservation is always something taken back out of that which is demised.[42] Accordingly, a reservation, in its technical sense, is

---

[40] See, e.g., *Bortolotti v. Hayden*, 449 Mass. 193, 866 N.E.2d 882 (2007); *Park Station v. Bosse*, 378 Md. 122, 835 A.2d 646 (2003), citing *Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 536 A.2d 1137 (1988); *Barnhart v. McKinney*, 235 Kan. 511, 682 P.2d 112 (1984), citing *Henderson v. Bell*, 103 Kan. 422, 173 P. 1124 (1918); *South Kitsap Family Worship Center v. Weir*, 135 Wash. App. 900, 146 P.3d 935 (2006); *In re Estate of Owen*, 855 N.E.2d 603 (Ind. App. 2006); *Webb v. Reames*, 326 S.C. 444, 485 S.E.2d 384 (S.C. App. 1997); *Southall v. Humbert*, 454 Pa. Super. 360, 685 A.2d 574 (1996). See, also, Restatement (Third) of Property (Servitudes) § 3.3, comment *b*. (2000); 61 Am. Jur. 2d *Perpetuities, Etc.* § 61 (2012).

[41] See *Elrod v. Heirs, Devisees, etc.*, 156 Neb. 269, 55 N.W.2d 673 (1952). See, also, *Bauer v. Lancaster Cty. Sch. Dist. 001*, 243 Neb. 655, 501 N.W.2d 707 (1993).

[42] *Elrod, supra* note 41.

a regranting of an interest in the property from the grantee to the grantor.[43] On the other hand, an exception is some existing part of the estate excluded from the grant and retained by the grantor as if there had been no conveyance made by him to the grantee.[44]

[13] Whether a provision is a reservation or an exception does not depend upon the use of a particular word, but upon the character and effect of the provision itself.[45] The terms "exception" and "reservation" are frequently used synonymously, conjunctively, and interchangeably.[46] It is not necessarily conclusive, and many times not even significant, whether the word "except" or "reserve" is selected.[47] The intent is the primary matter to be considered.[48] The Legislature's intent to modify and eliminate such common-law technicalities and exactions was codified in its adoption of the Uniform Property Act, Neb. Rev. Stat. § 76-101 et seq. (Reissue 2009).[49] Specifically, § 76-106 provides that "[a]n otherwise effective reservation of property by the conveyor reserves the interest the conveyor had prior to the conveyance unless an intent to reserve a different interest is effectively manifested."[50]

In its order, the court relied on a statement in *Schaffert v. Hartman*[51] to determine that a right of first refusal is not a valid reservation because it does not create a right to use and

---

[43] Restatement (First) of Property, *supra* note 17, § 473.

[44] *Elrod, supra* note 41.

[45] *Id.* See, also, 23 Am. Jur. 2d *Deeds* §§ 265 and 267 (2013).

[46] *Elrod, supra* note 41.

[47] See *id.*

[48] *Id.*

[49] *Id.*

[50] See *id.*

[51] *Schaffert v. Hartman*, 203 Neb. 271, 278 N.W.2d 343 (1979), *disapproved on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992).

enjoy the land. In *Schaffert*, we stated that "'a reservation, while not affecting the title to the thing granted, may reserve to the grantor the right to the use or enjoyment of a portion thereof, as an easement, the right to pass over, or the like.'"[52]

[14] However, as our opinion in *Elrod v. Heirs, Devisees, etc.*[53] makes clear, reservations may create easements but are not limited to creating interests permitting the use and enjoyment of the land. Instead, a grantor may reserve any nonpossessory interest in the land that he could not have held separate from his ownership interest.[54]

In the instant case, the deed contained the following provision: "No sale of the above-described premises shall be consummated without giving at least 30 days written notice of the terms to Grantor. Grantor shall have the right to buy the lot on the same terms."

While the provision does not contain the terms "except" or "reserve," it shows that John intended to create a right of first refusal in himself through the conveyance. Accordingly, we must give such effect to the provision, under § 76-106.

[15] John's argument that a reservation is not subject to the statute of frauds confuses the terms "exceptions" and "reservations." Only an exception is outside of the statute of frauds by causing an interest to be withheld from the conveyance. Instead, as a re-granting of an interest in land by the grantee, a reservation is subject to the statute of frauds, Neb. Rev. Stat. § 36-103 (Reissue 2016), which provides, in relevant part, the following language: "No estate or interest in land . . . shall hereafter be created, granted, assigned, surrendered, or declared, unless . . . by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same."

---

[52] *Id.* at 274, 278 N.W.2d at 346, quoting *Eiseley v. Spooner*, 23 Neb. 470, 36 N.W. 659 (1888).

[53] *Elrod, supra* note 41.

[54] Restatement (First) of Property, *supra* note 17, § 473.

Here, the court applied § 36-105 instead of § 36-103. Section 36-105, in relevant part, states: "Every contract . . . for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom . . . sale is to be made."

Based on our discussion above, the right of first refusal in this case does not resemble a contract for the sale of land. The right of first refusal was only a right to elect to purchase the property at the same price and on the same terms and conditions as those contained in a good faith offer that the Laus manifested a willingness to accept. Accordingly, the right of first refusal in the deed was within § 36-103, not § 36-105. Nevertheless, both statutes require a signature by the party to be charged by the writing.

### (d) Laus' Acceptance of Deed Binds Them to Right of First Refusal Contained Therein

John argues that the Laus consented to the right of first refusal by their words, conduct, and acquiescence, which consent is indicated primarily by their acceptance of the deed and not seeking reformation for over 16 years. The Laus and the Sporers argue that the right of first refusal is not enforceable because they did not sign the deed or receive consideration for granting the right and never agreed orally to the right.

[16] "'The general rule is that the grantee in a deed accepted by him is a party to the deed, even though he does not sign it, and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor.'"[55] Similarly, Corpus Juris Secundum provides the following on the effect of a grantee accepting a deed that imposes an obligation on the grantee:

---

[55] *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 56 (Tex. App. 2011), quoting *Greene v. White*, 137 Tex. 361, 153 S.W.2d 575 (1941).

Where a deed by which property is conveyed to the grantee, and which purports to be between the parties, is accepted by him or her, the fact that it is signed and sealed by the grantor only will not render it void for want of mutuality, but it will be construed as the deed of both parties. Thus, if the deed contains covenants or restrictions, its delivery to and acceptance by the grantee is deemed equivalent to the grantee's signature so as to the [sic] supply the mutual consent necessary to form a contract and make the covenants or restrictions enforceable.[56]

Other sources have held the same to be true regarding easements[57] and options to repurchase.[58] The enforceability of reservations and covenants included in deeds is a widely accepted and longstanding principle of law.[59] Courts have tested this principle and found it remains valid under both the doctrine of estoppel by deed[60] and doctrine of part performance,[61]

---

[56] 26A C.J.S. *Deeds* § 65 at 93-94 (2011). Accord, *Murphey v. Gray*, 84 Ariz. 299, 327 P.2d 751 (1958); *Carlson v. Libby*, 137 Conn. 362, 77 A.2d 332 (1950); *Harris & Gurganus v. Williams*, 37 N.C. App. 585, 246 S.E.2d 791 (1978); 20 Am. Jur. 2d *Covenants, Etc.* §§ 4 and 151 (2015); 9 Richard R. Powell & Michael Allan Wolf, Powell on Real Property § 60.02 n.16 (2000).

[57] See, e.g., *Chase v. Nelson*, 507 N.E.2d 640 (Ind. App. 1987). See, also, *Evans v. Board of County Com'rs*, 97 P.3d 697 (2004), *affirmed* 123 P.3d 432 (2005).

[58] See, e.g., *Scutti Enterprises v. Wackerman Guchone*, 153 A.D.2d 83, 548 N.Y.S.2d 967 (1989); *Mearida v. Murphy*, 106 Ill. App. 3d 705, 435 N.E.2d 1352, 62 Ill. Dec. 380 (1982).

[59] See *The Midland Railway Company v. Fisher*, 125 Ind. 19, 24 N.E. 756 (1890). See, also, *Employers Indemnity Corp. v. Garrett*, 327 Mo. 874, 38 S.W.2d 1049 (1931).

[60] *XTO Energy Inc., supra* note 55, citing *Greene, supra* note 55; *Mearida, supra* note 58; 28 Am. Jur. 2d *Estoppel and Waiver* §§ 15 and 18 (2011).

[61] *Scutti Enterprises, supra* note 58; *Terrell v. Messenger*, 428 So. 2d 1241 (La. App. 1983).

which is codified in Nebraska as Neb. Rev. Stat. § 36-106 (Reissue 2016).

[17] Further, this principle's utility in protecting a grantor from having a reservation invalidated under the statute of frauds is consistent with the policy of the statute of frauds. The statute of frauds "is based on principles of equity, in particular, recognition that the purpose of the Statute of Frauds is to prevent frauds, not to enable a party to perpetrate a fraud by using the statute as a sword rather than a shield."[62]

[18] We are persuaded by the great weight of authority that the acceptance of a deed operates to satisfy the requirement, under § 36-103, that the contract creating an interest in land be signed by the party to be charged therewith.

[19] Further, in the absence of fraud, one who fails to read a contract cannot avoid the effect of signing.[63] Because accepting a deed has the legal effect of signing it, this principle applies with equal force.[64] Accordingly, if a deed contains an unsatisfactory reservation, the grantee may avoid it by refusing acceptance.

Here, the Laus accepted the deed and enjoyed the benefit of it for 15 years. While they claim to have been unaware of the right of first refusal in the deed, the Laus' testimony shows that they believed that they were granting John a right of first refusal through the trust deed. Accordingly, their argument that they did not agree to such a right is more properly characterized as not agreeing to the right for an indefinite duration.

Nevertheless, the attorney testified that it would have been his course of practice to explain the documents in the

---

[62] *Scutti Enterprises, supra* note 58, 153 A.D.2d at 87, 548 N.Y.S.2d at 970. See, also, *Corcoran v. Leon's, Inc.*, 126 Neb. 149, 252 N.W. 819 (1934).

[63] *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 702 N.W.2d 792 (2005).

[64] See, *Hughes v. Pontotoc County*, 242 So. 2d 438 (Miss. 1970); *Evans, supra* note 57.

transaction to the parties and highlight the provision in the deed because it was unique. Further, John testified that it was discussed and agreed to by the Laus before and during a meeting with the attorney.

Further, it is undisputed that the Laus accepted the deed and that Debra Lau recorded it. Douglas Lau testified that he read the deed and that any confusion he had regarding the right of first refusal was not based on any misrepresentations by John. While Debra Lau claims she did not read the deed until this litigation was initiated, she cannot escape the effect of accepting it when she had ample opportunity to read the document. Accordingly, we find that the Laus in effect signed the deed and are bound by its terms.

Therefore, we hold that the reservation of the right of first refusal in the deed satisfied the statute of frauds. Consequently, the court erred in granting the Laus' and the Sporers' motions for summary judgment against John. To hold otherwise would be a misapplication of the statute of frauds by inequitably allowing the Laus to retain the benefit of the deed while escaping a clear statement of intent on its face.

[20] Regarding the argument of the Laus and the Sporers concerning consideration, the record does not show that they raised the issue of consideration before the court, and the court did not rule on the issue in its order. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[65] Therefore, we do not consider this argument on appeal.

## 2. Remaining Assignments of Error and Arguments

[21] Because the right of first refusal was not voidable under the statute of frauds, we do not consider whether the statute of frauds defense was properly raised as an affirmative

---

[65] *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017).

defense. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[66]

John also claims that the court erred in denying his motion for summary judgment. Nevertheless, we find that John is not entitled to summary judgment at this time because material issues of fact remain that have not been considered by the court. As recognized above, an appellate court will not consider an issue on appeal that was not decided by the trial court.

## V. CONCLUSION

We hold that a right of first refusal may be reserved in a deed. Further, the acceptance of a deed, absent fraud, satisfies the requirements of the statute of frauds for any reservations contained therein. Accordingly, the court erred by finding that no contract binding the Laus to a right of first refusal existed and by granting summary judgment for the Laus and the Sporers, as a matter of law, against John.

Reversed and remanded for
further proceedings.

Heavican, C.J., participating on briefs.
Wright, J., not participating in the decision.
Stacy, J., not participating.

---

[66] *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017).